**THE VESSEL FIJIAN SWIFT,**
Petitioner,

v.

**TRIAL DIVISION, HIGH COURT OF AMERICAN SAMOA,**
Respondent

(Star Kist Samoa, Inc., Real Party in Interest)

No. 108-1975

High Court of American Samoa

Civil Jurisdiction, Appellate Division

August 14, 1975

This is a petition for issuance of a writ of prohibition forbidding the respondent, the trial division of the High Court of American Samoa, from entertaining an in rem

action against the motor vessel Fijian Swift (hereinafter sometimes referred to as petitioner). The trial division and Star Kist Samoa, the real party in interest and plaintiff below, were given notice of the filing of the petition and were served with an alternative writ of prohibition in which we scheduled a hearing to show cause why a peremptory writ should not issue. No return or answer was made by the respondent or the real party in interest and no briefs were submitted by them. Star Kist appeared at the hearing and, without contesting the facts, argued for denial of the petition.

Plaintiffs below filed a complaint in rem and in personam in the trial division against the petitioner alleging loss of and damage to cargo shipped on the Fijian Swift under a voyage charter party and pursuant to a bill of lading under which Star Kist was the ultimate consignee. The clerk of the High Court forthwith issued a warrant for the arrest of the vessel pursuant to the Federal Rules of Civil Procedure, Supplemental Admiralty and Maritime Rule C. The rules of practice promulgated by the High Court provide that "Admiralty rules are as published in the supplement to the Federal Rules of Civil Procedure." H.C.R. 3. The petitioner filed a motion to dismiss the complaint on the ground that the trial division of the High Court does not possess the authority to sit as an admiralty court and exercise *in rem* jurisdiction and therefore never acquired jurisdiction over the cause. This motion was denied as was petitioner's subsequent motion for leave to file an interlocutory appeal on the question of jurisdiction. Thereupon, the Fijian Swift presented to this Court its petition for a writ of prohibition.

■ The American Samoa Code directs that the High Court shall have authority "to issue all writs . . . not inconsistent with law or with the rules made by the Chief Justice of American Samoa, as may be required for the due

administration of justice . . . 5 A.S.C. 403 (1973). Under this provision, the appellate division of the High Court, being a tribunal superior to the trial division, has the power to grant a writ of prohibition. Neither our rules of practice nor the enactments of the Legislature of American Samoa, the Fono, prescribe the procedure to be followed by this court in its consideration of a petition such as that now before us. We are guided, therefore, by the common law practice.

■ As the court of last resort, the appellate division is responsible for securing order and regularity in judicial proceedings within its territorial and statutory jurisdiction. Thus, we may issue a writ of prohibition if to do so would be in aid of our appellate jurisdiction. Our authority in this respect is similar to that of the United States Supreme Court and Courts of Appeals as set out in the All Writs Statute of the Judicial Code of 1948. 28 U.S.C. § 1651(a) (1970). We consider the question of whether the trial division can sit as an admiralty court and acquire jurisdiction through issuance of in rem process to be so affected with the public interest as to merit determination at the earliest possible moment. See Ex parte Peru, 318 U.S. 578 (1943).

■ Congress has passed no recognized organic act providing for the civil government of American Samoa and has not incorporated this territory into the United States. There is no federal legislation creating a court system for American Samoa. When Congress "organizes" a particular territory under its power to "make all needful rules . . . respecting territory . . . of the United States," it usually institutes a general system of courts therefor. U.S. Const. art. IV, § 3. These are legislative rather than constitutional courts. The latter are created under the power of Congress to establish tribunals inferior to the Supreme Court. U.S. Const. art. III, § 1.

The only federal legislation regarding the operation of this territory is contained in the act wherebv the cessions of "the islands of Tutuila and Manua and certain other islands of the Samoan group" were "accepted, ratified, and confirmed" by the United States. 48 U.S.C. § 1661(a) (1970). Sometimes referred to as the Temporary Organic Act,[1] this law states that

(c) Until Congress shall provide for the government of such islands, all civil, judicial, and military powers shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct. . . .

 Clearly, Congress intended by this statute to delegate its legislative power over this territory to the Chief Executive. The President, in turn, delegated this authority to the Secretary of the Interior[2] who presently exercises it and who has delimited "the extent and nature of the authority of the Government of American Samoa, as it will be exercised under [his] jurisdiction . . . pending enactment of organic legislation by the Congress."[3] One act of the Secretary was to approve and ratify the Revised Constitution of American Samoa which specifies that "The judicial power shall be vested in the High Court, the District Courts, and such other courts as may from time to time be created by law." Rev. Const. American Samoa, art. III, § 1. The Revised Constitution also provides for the vesting of legislative power in a locally elected Senate and House of Representatives, the Fono. It has broad authority "to pass legislation with respect to subjects of local application, except that: (a) No such legislation may be inconsistent with . . . the laws of the United States applicable in American Samoa; [or] (b) . . . conflict with treaties or

---

[1] Study Mission to Eastern Samoa, S. Doc. No. 38, 87th Cong., 1st Sess. 163 (1961).

[2] Exec. Order No. 10264, 16 F.R. 6419, June 29, 1971.

[3] Order No. 2657, F.R. Doc. 51-10655, August 29, 1951.

international agreements of the United States. . . ." Rev. Const. American Samoa, art. II, § 1. Thus, the power which Congress usually delegates to a territorial legislature by means of an organic act, the Secretary of the Interior delegated to the Fono through ratification of the American Samoa Constitution. Presumably, the approval of the Secretary of the Interior, which was a necessary antecedent to the viability of the Constitution, could be revoked. The exercise of this legislative power is also subject to the authority of the Governor to veto bills passed by the Fono. The Governor functions under the "general supervision of the Secretary of the Interior and is not locally elected." Rev. Const. American Samoa, art. IV, § 2. If his veto of a particular bill is overridden and he withholds his approval upon its resubmission, the proposed legislation must be approved by the Secretary of the Interior before it becomes law. Thus, when an enactment of the Legislature is signed into law, it is approved by the recipient of the delegated power of Congress and, we think, entitled to as much weight as the enactments of the Legislature in an organized territory.

The leading case concerning the jurisdiction which Congress may vest in courts created by a territorial legislature is *American Insurance Company and Ocean Insurance Company v. 356 Bales of Cotton*, 1 Peters 511, 7 L.Ed. 242 (1828). In that case, Congress had passed an organic act for the territory of Florida which "creates a territorial Legislature which shall have legislative power over all rightful objects of legislation; but no law shall be valid which is inconsistent with the laws and Constitution of the United States." 1 Peters 543. In dispute was the validity of a salvage decree issued by an inferior court which the local legislature had created and given jurisdiction over such claims. It being admitted that salvage is a "rightful object of legislation", the Court stated that the

local enactment was valid unless contrary to the laws and Constitution of the United States. Finding first that a territorial statute creating a court having admiralty jurisdiction was not inconsistent with the laws of the United States, particularly the provisions of the territory's organic act, the Court proceeded to a consideration of the constitutional issue.

Chief Justice Marshall, writing for the Court, explained that territorial courts are legislative rather than constitutional because

> The jurisdiction with which they are invested, is not a part of that judicial power which is defined in the 3d article of the Constitution, but is conferred by Congress, in the execution of those general powers which that body possesses over the territories of the United States. 1 Peters 546.

Thus,

> Although admiralty jurisdiction can be exercised in the States in those courts only which are established in pursuance of the 3d article of the Constitution, the same limitation does not extend to the territories. Id.

 It was concluded that Congress can vest admiralty jurisdiction in courts created by a territorial legislature. Subsequently, in *The Steamship City of Panama v. Phelps*, 11 Otto. 453, 25 L.Ed. 1061 (1880), the Supreme Court went on to state that

> in organizing Territories Congress may establish tribunals for the exercise of [admiralty] jurisdiction, or they may leave it to the Legislature of the Territory to create such tribunals. Courts of the kind, whether created by an Act of Congress or by a territorial statute, are not, in strictness, courts of the United States; or, in other words, the jurisdiction with which they are invested is not a part of the judicial power defined by the 3d article of the Constitution, but is conferred by Congress, in the execution of the general power which the Legislative Department possesses to make all needful rules and regulations respecting the public territory and other public property. 25 L.Ed. 1064.

From these decisions, it is clear that territorial courts can be given the authority to sit in admiralty and, as a consequence, entertain in rem actions and provide procedures for arresting vessels or other property that is the subject of a maritime action. We do not think it essential that the power of a territorial legislature to create tribunals having this competence be directly conferred by Congress. It is our view that this power, albeit subject to supervision in its exercise, has been delegated without impairment to the Legislature in American Samoa through the Executive branch of the federal government by the process outlined above.

Before we determine whether the Fono has, in fact, created a court in this territory which may administer in rem proceedings, we must dispose of the contention that the judicial power vested in the High Court by the American Samoa Constitution is plenary and thus comprehends the authority to sit as a court of admiralty. To do so, we need only look to the opinion in *356 Bales of Cotton*. The 7th section of the 1823 Organic Act for the territory of Florida provided

That the judicial power shall be vested in two Superior Courts, and in such inferior courts . . . as the legislative council of the territory may from time to time establish . . . each court shall have . . . original jurisdiction in all civil cases of the value of one hundred dollars, arising under and cognizable by the laws of the territory, now in force therein, or which may, at any time, be enacted by the legislative council thereof.

If judicial power means plenary jurisdiction, the Court would not have had to look to the enactments of the territorial legislature to find that an in rem action for the enforcement of an admiralty claim could be brought in a territorial court. In fact, it would have taken a specific

enactment of the territorial legislature to preclude a territorial court from sitting in admiralty and, under this constitutional theory, the power of the legislative branch to pass such a law would be in doubt.

■ The trial division misconceived the meaning of "judicial power." It has been said to be the power to hear and determine controversies and declare what the law is. *Rhode Island v. Massachusetts*, 12 Peters 657, 9 L.Ed. 1233 (1838). As such, it serves to define the governmental responsibilities of a court system and separates the powers of the judiciary from those of the executive and legislative. *Muskrat v. United States*, 219 U.S. 346 (1911). The question of whether the courts of American Samoa have the authority to sit as courts of admiralty and thus administer in rem proceedings properly raises a question of "jurisdiction." See, *National Malleable & Steel Castings Co. v. Goodlet*, 195 F.2d 8 (7th Cir. 1952). That term refers generally to the ability of a court to exercise its judicial power in cases of a certain class and particularly to the power of a court to hear and determine the cause before it. 20 Am.Jur.2d, Courts § 87. As the jurisdiction necessary to the maintenance of the cause before the trial division has not been conferred on any court in this territory by the American Samoa Constitution, its existence depends totally upon legislative grant.

A territorial statute conferring in rem admiralty jurisdiction on the High Court would be no more "inconsistent with the laws and Constitution of the United States" than was the statute considered in *356 Bales of Cotton*. While the passage of such laws by the Florida territorial legislature was expressly prohibited by that territory's organic act, the Constitution of American Samoa, as approved, only provides that no local legislation "may be

inconsistent with . . . the laws of the United States *applicable* in American Samoa." Rev. Const. American Samoa, art. II, § 1 (emphasis added). We express no opinion as to the validity of this narrow limitation but note that, generally and in point of fact, the exact status of the laws and Constitution of the United States in an unorganized and unincorporated territory such as American Samoa is uncertain.[4]

The American Samoa Code contains a comprehensive description of this territory's court system. The High Court and the district courts in each village possess judicial power. 5 A.S.C. § 1. The High Court consists of a trial division, lands and titles division, probate division, appellate division, and public health court. 5 A.S.C. §§ 402, 801, et seq. The Fono has also created within the trial division a traffic department and small claims department. 5 A.S.C. § 402. The subject matter jurisdiction of each division and department is set out in the Code. Id. They are specifically authorized to exercise personal jurisdiction in civil cases and a "long arm" provision has been enacted to aid in the

---

[4] That the entire spectrum of federal constitutional guarantees is not applicable here has been demonstrated in recent federal legislation. Public Law 93–435, which places "certain submerged lands within the jurisdiction of the governments of . . . American Samoa. . . . ," provides

"Sec. 6. No person shall be denied access to, or any of the benefits accruing from, the lands conveyed by this Act, or by the amendment made by this Act, on the basis of race, religion, creed, color, sex, national origin, or ancestry: *Provided, however,* That this section shall not be construed in derogation of any of the provisions of the April 17, 1900 cession of Tutuila and Aunuu or the July 16, 1904 cession of Manu'a Islands, as ratified by the Act of February 20, 1929 (45 Stat. 1253) and the Act of May 22, 1929 (45 Stat. 4)."

The Senate report accompanying this legislation explained that the proviso was added in order that

the civil rights provisions shall not conflict with the terms of the American Samoa cession. The Committee is aware that land in American Samoa is held communally and of their concern over the possible alienation of their land. The purpose of the proviso is to assure that there will be no conflict between this legislation and the American Samoan land policy to the degree that the ratification of the cession guaranteed this policy. S. Rep. No. 93-1152, 93d Cong., 2d Sess. (1974).

effectuation of this jurisdiction.[5] In addition, service of process by publication is allowed in certain actions to enable the courts to obtain personal jurisdiction.[6]

There is simply no provision in this comprehensive statutory scheme which, either expressly or by implication, empowers the courts of this territory to entertain in rem proceedings in cases of admiralty and maritime jurisdiction. The legislature has not undertaken to create an admiralty division of the High Court or an admiralty court within the trial division. Moreover, it has expressly described the jurisdiction of American Samoa courts over civil cases as being personal and it is a general principle of statutory interpretation that the mention of one thing implies the exclusion of another; *expressio unius est exclusio alterius. National R.R. Passenger Corp. v. National Assoc. of R.R. Passengers*, 414 U.S. 453, 458 (1974).

[5] 5 A.S.C. § 3 (1973) provides as follows:
"Jurisdiction.
 "(a) A court may exercise personal jurisdiction in civil cases over persons residing or found in American Samoa, or who have been duly summoned or voluntarily appear.
 "(b) Any person, firm or corporation, whether or not a citizen or resident of this territory, who in person or through an agent, takes any of the following actions, thereby submits, and if a corporation, submits its personal representative, to the jurisdiction of the courts of this territory, as to any cause of action, suit or proceeding arising out of such action;
 "(1) The transactions of any business within this territory;
 "(2) The commission of a tortious act within this territory;
 "(3) The ownership, use or possession of any real estate in this territory;
 "(4) Contracting to insure any person, property or risk within this territory at the time of contracting.
 "(c) Criminal cases shall be prosecuted and tried only in a court having territorial jurisdiction over the place where the crime was committed."
[6] 11 A.S.C. 2001 (1973) provides in part as follows:
"Service by publication—When allowed
 "When an affidavit is filed that personal service cannot be made upon the defendant within American Samoa, service may be made by publication in any of the following cases:
 . . .
 "(2) An action brought against a nonresident of American Samoa or a foreign corporation, having in American Samoa property or debts owing to such defendants and sought to be appropriated in any way."

■ The trial judge construed the statute which provides that the High Court "shall have power to issue all writs and other process . . . not inconsistent with law . . ." as being all inclusive and therefore comprehending the power to issue a warrant for the arrest of a vessel. 5 A.S.C. § 403 (1973). This act is in pari materia with the aforementioned general jurisdictional statute and should be construed in harmony therewith and not be given any greater effect than its terms require. We note that service of process is merely the means by which the parties to an action are brought within the jurisdiction of a court. If the High Court had, in the first place, been given in rem jurisdiction over maritime causes of action, we would be in agreement with the trial division. However, as we concluded above, this has not been done. We hold that for the High Court to issue process for the arrest of a vessel would be "inconsistent with law" and therefore not within its power.

■ The trial division supported its reading of the "all writs" statute by citing High Court Rule 3 where it is stated that "Admiralty Rules are as published in the supplement to the Federal Rules of Civil Procedure." That Rule also provides, however, that "Proceedings in the High Court will be conducted *insofar as applicable*, . . . in accordance with the U.S. Federal Rules of Civil Procedure. . . ." and that "in cases of conflict" the Revised Code of American Samoa has precedence over the federal rules. Similar language appears in a statute concerning civil procedure in this court. 11 A.S.C. § 801 (1973). Because it would be inconsistent with the statutory jurisdiction of the High Court for it to issue process for the arrest of a vessel, we hold that insofar as the provisions of the "Supplemental Rules for Certain Admiralty and Maritime Claims" concern actions in rem, they are inapplicable in proceedings in the courts of American Samoa.

■ Nothing we have said herein detracts from the authority of the High Court to exercise in personam jurisdiction over admiralty and maritime causes of action. The federal Judiciary Code exempts this common law remedy from the exclusive jurisdiction of the federal courts over such cases. 28 U.S.C. § 1333. See *Tialigo v. Steffany*, High Court Civil Action No. 2766 (1974). Thus, complaints filed in the High Court may

With respect to any admiralty or maritime claim in personam . . . contain a prayer for process to attach the defendant's goods and chattels, or credits and affects in the hands of garnishees named in the complaint to the amounts sued for, if the defendant shall not be found within the [territory]. Fed. R. Civ. P., Supplemental Rule B(1).

In the enforcement of this personal liability, a vessel "may be seized, attached [and] levied upon by ordinary process like any of the debtor's assets. . . ." Gilmore and Black, Law of Admiralty § 9-2 (1974). The supplemental federal rules for maritime claims, are, therefore, at least on their face, applicable in the High Court insofar as they are consistent with our statutory jurisdiction.[7] We note, however, that under the requirements established by the Supreme Court most recently in *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 42 L.Ed.2d 751 (1975), the procedure required by the federal rules governing maritime actions in rem and in personam with process of maritime attachment appear to fail to meet due process requirements.[8] We

---

[7] The American Samoa Code provides a complete basis for instituting an in personam action with process of maritime attachment in the High Court. 5 A.S.C. § 3 (1973), supra note 5; 11 A.S.C. §§ 2001–2004 (1973), in part supra note 6; 11 A.S.C. §§ 6201–6220 (1973).

[8] The Georgia garnishment statute under consideration by the Court was found constitutionally insufficient because under it "a bank account, surely a form of property, was empounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer." 42 L.Ed.2d 751, 757. There is a marked similarity between the procedures allowed under the Georgia statute and those required by the Federal Supplemental Rules for Certain Admiralty and Maritime Claims.

recognize, of course, that in rem maritime actions are different from attachments and garnishments of the type considered by the Court in *North Georgia Finishing v. Di-Chem*,[9] but we can see no compelling basis for distinguishing between them insofar as the requirements of due process under both the United States and American Samoa Constitutions are concerned. The same is true, a fortiori, as to actions brought in personam with process of maritime attachment. We do not, however, decide this constitutional issue or examine it further at this time, as to do so is not necessary for the disposition of the case before us.

Lastly, the trial division concluded that its finding of jurisdiction in the cause before it was supported by the necessity and importance of "in rem Admiralty jurisdiction ... in the orderly administration of justice in this maritime territory." The case it cited as having recognized this principle, *Pago Pago Charterers, Inc. v. Motorship Chen Chin, et al.*, High Court Civil Action No. 1266 (1970), does not appear to have actually done so and certainly does not constitute precedent for the exercise of in rem jurisdiction by the trial division over maritime claims. There, a libel in rem was filed in the High Court and the clerk issued a warrant for the arrest of the Chen Chin. The only judicial action taken before the suit was settled and voluntarily dismissed was the holding of a "Prehearing Conference upon the Libel" at which the presiding judge granted the defendant additional time to obtain counsel and endeavored to preserve the status quo until representation was secured by ordering the vessel, which presumably had already been seized, to be held.

It may well be, as the trial judge in the instant case stated, that "the power to sit as an Admiralty court and issue process in rem is 'required for the due administration

---

[9] Citing *Fuentes v. Shevin*, 407 U.S., at 89–90, the Court in *Di-Chem* stated "We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause."

of justice . . .' [because] the general welfare of American Samoa, an insular territory, is inextricably bound to maritime commerce, and merits and demands the enforcement of the rights and duties applicable thereto." However, this is a determination which should be left to the local legislature and, if made, acted upon in such manner as it sees fit through the exercise of its constitutional powers. See, *H. K. Porter Co., Inc. v. N.L.R.B.*, 397 U.S. 99 (1970).

We hold that under existing provisions of the American Samoa Code the courts of this territory cannot exercise in rem jurisdiction over admiralty and maritime claims. It is therefore ORDERED that the trial division of the High Court of American Samoa is prohibited from exercising in rem jurisdiction in the case of *Star Kist Samoa, Inc. v. The Vessel M.V. Fijian Swift and Reef Shipping Co., Ltd.*, High Court Civil Action 3082 (1975).

It is further ORDERED that the complaint in rem in said action is hereby dismissed for want of jurisdiction and that all acts of the clerk of court and trial division done therein without jurisdiction, including those relating to the arrest, seizure and release of the M.V. Fijian Swift, and actions taken by the parties in said case in reliance upon the in rem jurisdiction of the High Court, including bonds and undertakings and stipulations entered into, are dissolved, discharged or returned.