# NORTH GEORGIA FINISHING, INC. *v.* DI-CHEM, INC.

No. 73-1121.   Argued November 18, 1974— Decided January 22, 1975

WHITE, J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, STEWART, and MARSHALL, JJ., joined.  STEWART, J., filed a concurring statement, *post*, p. 608.  POWELL, J., filed an opinion concurring in the judgment, *post*, p. 609.  BLACKMUN, J., filed a dissenting opinion, in which REHNQUIST, J., joined, and in numbered paragraph 5 of which BURGER, C. J., joined, *post*, p. 614.

*Warren N. Coppedge, Jr.*, argued the cause for petitioner.   With him on the brief was *Nathaniel Hansford*.

*Lemuel Hugh Kemp* argued the cause and filed a brief for respondent.

MR. JUSTICE WHITE delivered the opinion of the Court.

Under the statutes of the State of Georgia, plaintiffs in pending suits are "entitled to the process of garnish-

ment." Ga. Code Ann. § 46–101.[1] To employ the process, plaintiff or his attorney must make an affidavit before "some officer authorized to issue an attachment, or the clerk of any court of record in which the said garnishment is being filed ôr in which the main case is filed, stating the amount claimed to be due in such action . . . and that he has reason to apprehend the loss of the same

---

[1] The relevant provisions of the Georgia Code Annotated are as follows:

§ 46–101

"Right to writ; wages exempt until after final judgment

"In cases where suit shall be pending, or where judgment shall have been obtained, the plaintiff shall be entitled to the process of garnishment under the following regulations: Provided, however, no garnishment shall issue against the daily, weekly or monthly wages of any person residing in this State until after final judgment shall have been had against said defendant: Provided, further, that the wages of a share cropper shall also be exempt from garnishment until after final judgment shall have been had against said share cropper: Provided, further, that nothing in this section shall be construed as abridging the right of garnishment in attachment before judgment is obtained."

§ 46–102

"Affidavit; necessity and contents. Bond

"The plaintiff, his agent, or attorney at law shall make affidavit before some officer authorized to issue an attachment, or the clerk of any court of record in which the said garnishment is being filed or in which the main case is filed, stating the amount claimed to be due in such action, or on such judgment, and that he has reason to apprehend the loss of the same or some part thereof unless process of garnishment shall issue, and shall give bond, with good security, in a sum at least equal to double the amount sworn to be due, payable to the defendant in the suit or judgment, as the case may be, conditioned to pay said defendant all costs and damages that he may sustain in consequence of suing out said garnishment, in the event that the plaintiff shall fail to recover in the suit, or it shall appear that the amount sworn to be due on such judgment was not due, or that the property or money sought to be garnished was not subject to process of garnishment. No person shall be taken as security on the bond who is an attorney for the plaintiff or a nonresident unless the non-

or some part thereof unless process of garnishment shall issue." § 46–102. To protect defendant against loss or damage in the event plaintiff fails to recover, that section also requires plaintiff to file a bond in a sum double the amount sworn to be due. Section 46–401 permits the defendant to dissolve the garnishment by filing a bond "conditioned for the payment of any judgment that shall be rendered on said garnishment." Whether these provisions satisfy the Due Process Clause of the Fourteenth Amendment is the issue before us in this case.

On August 20, 1971, respondent filed suit against petitioner in the Superior Court of Whitfield County,

---

resident is possessed of real estate in the county where the garnishment issues of the value of the amount of such bond."

§ 46–103

"Affidavit by agent or attorney

"When the affidavit shall be made by the agent or attorney at law of the plaintiff, he may swear according to the best of his knowledge and belief, and may sign the name of the plaintiff to the bond, who shall be bound thereby in the same manner as though he had signed it himself."

§ 46–104

"Affidavit and bond by one of firm, etc.

"When the debt for recovery of which garnishment is sought shall be due to partners or several persons jointly, any one of said partners or joint creditors may make the affidavit and give bond in the name of the plaintiff, as prescribed in cases of attachment."

§ 46–401

"Dissolution of garnishments; bond; judgment on bond

"When garnishment shall have been issued, the defendant may dissolve such garnishment upon filing in the clerk's office of the court, or with the justice of the peace, where suit is pending or judgment was obtained, a bond with good security, payable to the plaintiff, conditioned for the payment of any judgment that shall be rendered on said garnishment. The plaintiff may enter up judgment upon such bond against the principal and securities, as judgment may be entered against securities upon appeal, whenever said plaintiff shall obtain the judgment of the court against the property or funds against which garnishment shall have been issued."

Ga., alleging an indebtedness due and owing from petitioner for goods sold and delivered in the amount of $51,279.17. Simultaneously with the filing of the complaint and prior to its service on petitioner, respondent filed affidavit and bond for process of garnishment, naming the First National Bank of Dalton as garnishee. The affidavit asserted the debt and "reason to apprehend the loss of said sum or some part thereof unless process of Garnishment issues." [2] The clerk of the Superior Court forthwith issued summons of garnishment to the bank, which was served that day. On August 23, petitioner filed a bond in the Superior Court conditioned to pay any final judgment in the main action up to the amount claimed, and the judge of that court thereupon discharged the bank as garnishee. On September 15, petitioner filed a motion to dismiss the writ of garnishment and to discharge its bond, asserting, among other things, that the statutory garnishment procedure was unconstitutional in that it violated "defendant's due process and equal protection rights guaranteed him by the Constitution of the

---

[2] The affidavit in its entirety was as follows:

"SUPERIOR COURT OF *Whitfield* COUNTY GEORGIA, *Whitfield* COUNTY.

"Personally appeared *R. L. Foster, President of Di-Chem, Inc.,* who on oath says that he is *President of Di-Chem, Inc.*, plaintiff herein and that *North Georgia Finishing, Inc.*, defendant, is indebted to said plaintiff in the sum of $51,279.17 DOLLARS, principal, $. . . . . . . . . ., interest, $. . . . . . . . . attorney's fees, and $. . . . . . . . . cost and that said plaintiff has—a suit pending—*returnable to the* Superior Court of *Whitfield* County, and that affiant has reason to apprehend the loss of said sum or some part thereof unless process of Garnishment issues.

"Sworn to and subscribed before me, this *August* 20, 1971.
                                                        "/s/ *R. L. Foster,* Affiant.
"/s/ *Dual Broadrick,* Clerk
"Superior Court of *Whitfield* County." App. 3–4.

United States and the Constitution of the State of Georgia." App. 11. The motion was heard and overruled on November 29. The Georgia Supreme Court,[3] finding that the issue of the constitutionality of the statutory garnishment procedure was properly before it, sustained the statute and rejected petitioner's claims that the statute was invalid for failure to provide notice and hearing in connection with the issuance of the writ of garnishment. 231 Ga. 260, 201 S. E. 2d 321 (1973).[4] We granted certiorari. 417 U. S. 907 (1974). We reverse.

The Georgia court recognized that *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969), had invalidated a statute permitting the garnishment of wages without notice and opportunity for hearing, but considered that case to have done nothing more than to carve out an exception, in favor of wage earners, "to the general rule of legality of garnishment statutes." 231 Ga., at 264, 201 S. E. 2d, at 323. The garnishment of other assets or properties pending the outcome of the main action, although the effect was to " 'impound [them] in the hands of the garnishee,' " *id.*, at 263, 201 S. E. 2d, at 323, was apparently thought not to implicate the Due Process Clause.

This approach failed to take account of *Fuentes* v. *Shevin*, 407 U. S. 67 (1972), a case decided by this Court

---

[3] Appeal was taken in the first instance to the Georgia Supreme Court. That court, without opinion, transferred the case to the Georgia Court of Appeals. The latter court issued an opinion, 127 Ga. App. 593, 194 S. E. 2d 508 (1972). The Georgia Supreme Court then issued certiorari, 230 Ga. 623, 198 S. E. 2d 284 (1973).

[4] Subsequent to the Georgia Supreme Court's decision in this case, a three-judge federal court, sitting in the Northern District of Georgia declared these same statutory provisions unconstitutional. *Morrow Electric Co.* v. *Cruse*, 370 F. Supp. 639 (1974).

more than a year prior to the Georgia court's decision. There the Court held invalid the Florida and Pennsylvania replevin statutes which permitted a secured installment seller to repossess the goods sold, without notice or hearing and without judicial order or supervision, but with the help of the sheriff operating under a writ issued by the clerk of the court at the behest of the seller. That the debtor was deprived of only the use and possession of the property, and perhaps only temporarily, did not put the seizure beyond scrutiny under the Due Process Clause. "The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause." *Id.*, at 86. Although the length or severity of a deprivation of use or possession would be another factor to weigh in determining the appropriate form of hearing, it was not deemed to be determinative of the right to a hearing of some sort. Because the official seizures had been carried out without notice and without opportunity for a hearing or other safeguard against mistaken repossession, they were held to be in violation of the Fourteenth Amendment.

The Georgia statute is vulnerable for the same reasons. Here, a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer.

Nor is the statute saved by the more recent decision in *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600 (1974). That case upheld the Louisiana sequestration statute which per-

mitted the seller-creditor holding a vendor's lien to secure a writ of sequestration and, having filed a bond, to cause the sheriff to take possession of the property at issue. The writ, however, was issuable only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration. The Louisiana law also expressly entitled the debtor to an immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued.

The Georgia garnishment statute has none of the saving characteristics of the Louisiana statute. The writ of garnishment is issuable on the affidavit of the creditor or his attorney, and the latter need not have personal knowledge of the facts. § 46–103. The affidavit, like the one filed in this case, need contain only conclusory allegations. The writ is issuable, as this one was, by the court clerk, without participation by a judge. Upon service of the writ, the debtor is deprived of the use of the property in the hands of the garnishee. Here a sizable bank account was frozen, and the only method discernible on the face of the statute to dissolve the garnishment was to file a bond to protect the plaintiff creditor. There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment. Indeed, it would appear that without the filing of a bond the defendant debtor's challenge to the garnishment will not be entertained, whatever the grounds may be.[5]

---

[5] Petitioner so asserts, relying on *Jackson* v. *Barksdale,* 17 Ga. App. 461, 87 S. E. 691 (1916); *Powell* v. *Powell,* 95 Ga. App. 122, 97 S. E. 2d 193 (1957). Respondent, without citation of authority states that "[c]ounsel could have attacked the garnishment in other ways either in the State or Federal Courts. . . ." Brief for Respondent 5.

Respondent also argues that neither *Fuentes* nor *Mitchell* is apposite here because each of those cases dealt with the application of due process protections to consumers who are victims of contracts of adhesion and who might be irreparably damaged by temporary deprivation of household necessities, whereas this case deals with its application in the commercial setting to a case involving parties of equal bargaining power. See also *Sniadach* v. *Family Finance Corp.*, 395 U. S. 337 (1969). It is asserted in addition that the double bond posted here gives assurance to petitioner that it will be made whole in the event the garnishment turns out to be unjustified. It may be that consumers deprived of household appliances will more likely suffer irreparably than corporations deprived of bank accounts, but the probability of irreparable injury in the latter case is sufficiently great so that some procedures are necessary to guard against the risk of initial error. We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause. *Fuentes* v. *Shevin*, 407 U. S., at 89–90.

Enough has been said, we think, to require the reversal of the judgment of the Georgia Supreme Court. The case is remanded to that court for further proceedings not inconsistent with this opinion.

*So ordered.*

Mr. Justice Stewart, concurring.

It is gratifying to note that my report of the demise of *Fuentes* v. *Shevin*, 407 U. S. 67, see *Mitchell* v. *W. T. Grant Co.*, 416 U. S. 600, 629–636 (dissenting opinion), seems to have been greatly exaggerated. Cf. S. Clemens, cable from Europe to the Associated Press, quoted in 2 A. Paine, Mark Twain: A Biography 1039 (1912).

MR. JUSTICE POWELL, concurring in the judgment.

I join in the Court's judgment, but I cannot concur in the opinion as I think it sweeps more broadly than is necessary and appears to resuscitate *Fuentes* v. *Shevin,* 407 U. S. 67 (1972). Only last term in *Mitchell* v. *W. T. Grant, Co.* 416 U. S. 600 (1974), the Court significantly narrowed the precedential scope of *Fuentes.* In my concurrence in *Mitchell,* I noted:

> "The Court's decision today withdraws significantly from the full reach of [*Fuentes'*] principle, and to this extent I think it fair to say that the *Fuentes* opinion is overruled." 416 U. S., at 623 (POWELL, J., concurring).

Three dissenting Justices, including the author of *Fuentes,* went further in their description of the impact of *Mitchell:*

> "[T]he Court today has unmistakably overruled a considered decision of this Court that is barely two years old, without pointing to any change . . . that might justify this total disregard of *stare decisis.*" 416 U. S., at 635 (STEWART, J., joined by DOUGLAS and MARSHALL, JJ., dissenting).

The Court's opinion in this case, relying substantially on *Fuentes,* suggests that that decision will again be read as calling into question much of the previously settled law governing commercial transactions. I continue to doubt whether *Fuentes* strikes a proper balance, especially in cases where the creditor's interest in the property may be as significant or even greater than that of the debtor. Nor do I find it necessary to relegate *Mitchell* to its narrow factual setting in order to determine that the Georgia garnishment statutes fail to satisfy the requirements of procedural due process.

As we observed in *Mitchell,* the traditional view of procedural due process had been that " '[w]here only

property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.'" *Id.*, at 611, quoting *Phillips v. Commissioner,* 283 U. S. 589, 596–597 (1931). Consistent with this view, the Court in the past unanimously approved prejudgment attachment liens similar to those at issue in this case. *McKay* v. *McInnes,* 279 U. S. 820 (1929); *Coffin Bros.* v. *Bennett,* 277 U. S. 29 (1928); *Ownbey* v. *Morgan,* 256 U. S. 94 (1921). See generally *Mitchell, supra,* at 613–614. But the recent expansion of concepts of procedural due process requires a more careful assessment of the nature of the governmental function served by the challenged procedure and of the costs the procedure exacts of private interests. See, *e. g., Goldberg* v. *Kelly,* 397 U. S. 254, 263–266 (1970); *Cafeteria Workers* v. *McElroy,* 367 U. S. 886, 895 (1961). Under this analysis, the Georgia provisions cannot stand.

Garnishment and attachment remedies afford the actual or potential judgment creditor a means of assuring, under appropriate circumstances, that the debtor will not remove from the jurisdiction, encumber, or otherwise dispose of certain assets then available to satisfy the creditor's claim.[1] Garnishment may have a seriously adverse impact on the debtor, depriving him of the use of his assets during the period that it applies. But this fact alone does not give rise to constitutional objection. The State's legitimate interest in facilitating creditor recovery through the provision of garnishment remedies has never been seriously questioned.

---

[1] Garnishment and attachment remedies also serve to insure that the State will retain jurisdiction to adjudicate the underlying controversy. The advent of the more liberal interpretation of the States' power to exert jurisdiction over nonresidents who are not present in the State, *International Shoe Co.* v. *Washington,* 326 U. S. 310 (1945), diminishes the importance of this function.

Pregarnishment notice and a prior hearing have not been constitutionally mandated in the past. Despite the ambiguity engendered by the Court's reliance on *Fuentes,* I do not interpret its opinion today as imposing these requirements for the future.[2] Such restrictions, antithetical to the very purpose of the remedy, would leave little efficacy to the garnishment and attachment laws of the 50 States.

In my view, procedural due process would be satisfied where state law requires that the garnishment be preceded by the garnishor's provision of adequate security and by his establishment before a neutral officer[3] of a factual basis of the need to resort to the remedy as a means of preventing removal or dissipation of assets required to satisfy the claim. Due process further requires that the State afford an opportunity for a prompt postgarnishment judicial hearing in which the garnishor has

[2] The Court also cites *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337 (1969), which established an exception for garnishment of an individual's wages. In such cases, the Due Process Clause requires notice and a hearing *prior* to application of the garnishment remedy. As the opinion itself indicates, however, the *Sniadach* rule is limited to wages, "a specialized type of property presenting distinct problems in our economic system." *Id.,* at 340. The Court did not purport to impose requirements of pregarnishment notice and hearing in other instances. *Ibid.* I therefore do not consider *Sniadach* to be more than peripherally relevant to the present case.

[3] I am not in accord with the Court's suggestion that the Due Process Clause might require that a *judicial* officer issue the writ of garnishment. The basic protection required for the debtor is the assurance of a prompt postgarnishment hearing before a judge. Such a hearing affords an opportunity to rectify any error in the initial decision to issue the garnishment. When combined with the availability of the garnishor's bond to compensate for any harm caused, the possibility of prompt correction of possible error suffices to satisfy the requirements of procedural due process in this context. It thus should be sufficient for a clerk or other officer of the court to issue the original writ upon the filing of a proper affidavit.

the burden of showing probable cause to believe there is a need to continue the garnishment for a sufficient period of time to allow proof and satisfaction of the alleged debt. Since the garnished assets may bear no relation to the controversy giving rise to the alleged debt, the State also should provide the debtor an opportunity to free those assets by posting adequate security in their place.

The Georgia provisions fall short of these requirements. Garnishment may issue on the basis of a simple and conclusory affidavit that the garnishor has reason to apprehend the loss of money allegedly owed. See Ga. Code Ann. § 46–101, set forth in full in the Court's opinion, *ante,* at 602 n. 1. As shown by the affidavit filed in this case, see *ante,* at 604 n. 2, an unrevealing assertion of apprehension of loss suffices to invoke the issuance of garnishment.[4] This is insufficient to enable a neutral officer to make even the most superficial preliminary assessment of the creditor's asserted need.[5]

---

[4] The Georgia courts have not amplified the statutory affidavit requirement through the process of judicial construction. See *Wilson* v. *Fulton Metal Bed Mfg. Co.,* 88 Ga. App. 884, 886, 78 S. E. 2d 360, 362 (1953).

[5] Since garnishment can issue in Georgia only in cases in which suit is pending or judgment has been rendered, see Ga. Code Ann. § 46–101, the issuing officer need not preliminarily inquire into the allegation of the existence of a debt. Nor do I contemplate that the initial showing of probable inability to collect the debt absent the issuance of the garnishment need be elaborate.

The facts of this case serve to illustrate the point. From the record and oral argument, it appears that the respondent feared that the only accessible and unencumbered assets of North Georgia Finishing were its bank accounts. At oral argument, counsel for petitioner indicated that North Georgia Finishing's holdings in real estate and tangible property in the State of Georgia were encumbered by mortgages and factoring contracts. It thus appears that respondent's apprehension of eventual inability to recover the debt

The most compelling deficiency in the Georgia procedure is its failure to provide a prompt and adequate postgarnishment hearing. Under Georgia law, garnishment is a separate proceeding between the garnishor and the garnishee. The debtor is not a party and can intervene only by filing a dissolution bond and substituting himself for the garnishee. *Leake* v. *Tyner*, 112 Ga. 919, 38 S. E. 343 (1901); *Powell* v. *Powell*, 95 Ga. App. 122, 97 S. E. 2d 193 (1957). As noted above, the issuance of the garnishment may impose serious hardship on the debtor. In this context, due process precludes imposing the additional burden of conditioning the debtor's ability to question the validity of its issuance or continuation on the filing of a bond. Moreover, the Georgia statute contains no provision enabling the debtor to obtain prompt dissolution of the garnishment upon a showing of fact,[6] nor any indication that the garnishor bears the burden of proving entitlement to the garnishment.

I consider the combination of these deficiencies to be fatal to the Georgia statute. Quite simply, the Georgia

may well have been entirely sufficient to justify the garnishment for the brief period required to conduct the post-garnishment hearing.

Bank accounts are readily susceptible to almost immediate transfer or dissipation, and this occurrence is often a likelihood where the debtor is a foreign corporation or a nonresident of the State. An affidavit in support of the garnishment or attachment of a nonresident's bank account would normally be sufficient for the writ if it averred that other less transitory assets were not available within the State to satisfy any prospective judgment.

[6] Petitioner asserts, without contradiction by the respondent, that Georgia law does not authorize the alleged debtor to question the facts contained in the garnishor's affidavit or to make a contrary submission of fact indicating that the garnishor's apprehension of possible loss is misconceived or is insufficient to warrant the continuation of the writ of garnishment.

provisions fail to afford fundamental fairness in their accommodation of the respective interests of creditor and debtor. For these reasons, I join in the judgment of the Court.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE REHNQUIST joins, dissenting.

The Court once again—for the third time in less than three years—struggles with what it regards as the due process aspects of a State's old and long-unattacked commercial statutes designed to afford a way for relief to a creditor against a delinquent debtor. On this third occasion, the Court, it seems to me, does little more than make very general and very sparse comparisons of the present case with *Fuentes* v. *Shevin,* 407 U. S. 67 (1972), on the one hand, and with *Mitchell* v. *W. T. Grant Co.,* 416 U. S. 600 (1974), on the other; concludes that this case resembles *Fuentes* more than it does *Mitchell;* and then strikes down the Georgia statutory structure as offensive to due process. One gains the impression, particularly from the final paragraph of its opinion, that the Court is endeavoring to say as little as possible in explaining just why the Supreme Court of Georgia is being reversed. And, as a result, the corresponding commercial statutes of all other States, similar to but not exactly like those of Florida or Pennsylvania or Louisiana or Georgia, are left in questionable constitutional status, with little or no applicable standard by which to measure and determine their validity under the Fourteenth Amendment. This, it seems to me, is an undesirable state of affairs, and I dissent. I do so for a number of reasons:

1. *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337 (1969), mentioned in passing by the Court in its present opinion, *ante,* at 605–606, was correctly regarded by the Georgia Supreme Court, 231 Ga. 260, 263–264, 201 S. E.

2d 321, 323 (1973), as a case relating to the garnishment of *wages*. The opinion in *Sniadach* makes this emphasis:

> "We deal here with wages—a specialized type of property presenting distinct problems in our economic system. We turn then to the nature of that property and problems of procedural due process." 395 U. S., at 340.

It goes on to speak of possible "tremendous hardship on wage earners with families to support," *ibid.,* and the "enormous" leverage of the creditor "on the wage earner," *id.,* at 341. *Sniadach* should be allowed to remain in its natural environment—wages—and not be expanded to arm's-length relationships between business enterprises of such financial consequence as North Georgia Finishing and Di-Chem.

2. The Court, *ante,* at 606, regards the narrow limitations of *Sniadach* as affected by *Fuentes*. It also bows to *Morrow Electric Co.* v. *Cruse,* 370 F. Supp. 639 (ND Ga. 1974), and the three-judge holding there that the Georgia statutes before us are unconstitutional. *Ante,* at 605 n. 4. Indeed, perhaps *Sniadach* for a time was so expanded (somewhat surprisingly, I am sure, to the *Sniadach* Court) by the implications and overtones of *Fuentes.* But *Mitchell* came along and *Morrow* was more than three months pre-*Mitchell. Sniadach*'s expansion was surely less under *Mitchell* than it might have appeared to be under *Fuentes.*

3. I would have thought that, whatever *Fuentes* may have stood for in this area of debtor-creditor commercial relationships, with its 4–3 vote by a bobtailed Court, it was substantially cut back by *Mitchell.* Certainly, MR. JUSTICE STEWART, the author of *Fuentes* and the writer of the dissenting opinion in *Mitchell,* thought so:

> "The deprivation of property in this case is iden-

tical to that at issue in *Fuentes,* and the Court does not say otherwise." 416 U. S., at 631.

"In short, this case is constitutionally indistinguishable from *Fuentes* v. *Shevin,* and the Court today has simply rejected the reasoning of that case and adopted instead the analysis of the *Fuentes* dissent." *Id.,* at 634.

"Yet the Court today has unmistakably overruled a considered decision of this Court that is barely two years old . . . . The only perceivable change that has occurred since the *Fuentes* case is in the makeup of this Court." *Id.,* at 635.

Surely, MR. JUSTICE BRENNAN thought so when he asserted in dissent that he was "in agreement that *Fuentes* . . . requires reversal" of the Louisiana judgment. *Id.,* at 636. And surely, MR. JUSTICE POWELL thought so, substantially, when, in his concurrence, he observed:

"The Court's decision today withdraws significantly from the full reach of [the *Fuentes*] principle, and to this extent I think it fair to say that the *Fuentes* opinion is overruled." *Id.,* at 623.

I accept the views of these dissenting and concurring Justices in *Mitchell* that *Fuentes* at least was severely limited by *Mitchell,* and I cannot regard *Fuentes* as of much influence or precedent for the present case.

4. *Fuentes,* a constitutional decision, obviously should not have been brought down and decided by a 4–3 vote when there were two vacancies on the Court at the time of argument. It particularly should not have been decided by a 4–3 vote when Justices filling the vacant seats had qualified and were on hand and available to participate on reargument.[1] Announcing the constitutional

---

[1] *Fuentes* was decided June 12, 1972. MR. JUSTICE POWELL and MR. JUSTICE REHNQUIST had taken their respective seats as Mem-

decision, with a four-Justice majority of a seven-Justice shorthanded Court, did violence to Mr. Chief Justice Marshall's wise assurance, in *Briscoe* v. *Commonwealth's Bank of Kentucky,* 8 Pet. 118, 122 (1834), that the practice of the Court "except in cases of absolute necessity" is not to decide a constitutional question unless there is a majority "of the whole court."

The Court encountered the same situation a century ago with respect to the *Legal Tender Cases;* mishandled the decisional process similarly; and came to regret the error.   Originally, in *Hepburn* v. *Griswold,* 8 Wall. 603 (1870),[2] the Court, assertedly by a 5–3 vote, with one vacancy, held the Legal Tender Act of 1862, 12 Stat. 345, to be unconstitutional with respect to prior debts. Mr. Justice Grier, who was in failing health, was noted as concurring.   8 Wall., at 626.   It was stated that the case "was decided in conference" on November 27, 1869, and the opinion "directed to be read" on January 29, 1870. *Ibid.*   Mr. Justice Grier, however, had submitted his resignation to the President in December 1869, effective February 1, 1870, and it had been accepted on December 15. The Justice last sat on January 31.   8 Wall., at vii-viii. The opinion and judgment in *Hepburn* actually were rendered on February 7, when Mr. Justice Grier was no longer on the bench.

A year later, with the two vacancies filled, the Court, by a 5–4 vote, overruled *Hepburn* and held the Legal Tender Act constitutional with respect to all debts. *Legal Tender Cases,* 12 Wall. 457 (1871).   The Court said:

> "That case [*Hepburn* v. *Griswold*] was decided by a divided court, and by a court having a less number of

bers of the Court five months before, on January 7.   404 U. S. xi-xvii.   *Fuentes* had been argued November 9, 1971.

[2] See also *Broderick's Executor* v. *Magraw,* 8 Wall. 639 (1870).

judges than the law then in existence provided this court shall have. . . . We have been in the habit of treating cases involving a consideration of constitutional power differently from those which concern merely private right [citing *Briscoe v. Commonwealth's Bank of Kentucky*]. We are not accustomed to hear them in the absence of a full court, if it can be avoided." *Id.*, at 553–554.

The failure in *Hepburn* to recall or adhere to the practice announced by the Marshall Court resulted in confusion, prompt reversal of position, embarrassment, and recrimination. See the opinion of Mr. Chief Justice Chase in dissent. 12 Wall., at 572.[3]

Later, Mr. Justice Burton called attention to this lapse and heartily endorsed the practice of withholding decision on a constitutional issue by less than a majority of a full Court, that is, today, by less than five votes when vacancies exist and are waiting to be filled or have been filled. Burton, The Legal Tender Cases: A Celebrated Supreme Court Reversal, 42 A. B. A. J. 231 (1956), reprinted as Chapter IX in The Occasional Papers of Mr. Justice Burton (E. Hudon ed. 1969). We allowed his advice, as well as that of the Marshall Court, to go unheeded when we permitted *Fuentes* to come down with only four supporting votes when a nine-Justice Court already was available on any reargument.

The admonition of the Great Chief Justice, in my view, should override any natural, and perhaps understandable, eagerness to decide. Had we bowed to that wisdom when

---

[3] Mr. Chief Justice Hughes described the result in the *Legal Tender Cases* as one of "three notable instances [in which] the Court has suffered severely from self-inflicted wounds." C. Hughes, The Supreme Court of the United States 50 (1928). The others he named were the *Dred Scott* decision, *Scott v. Sandford*, 19 How. 393 (1857), and the *Income Tax Case, Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 429 (1895), on rehearing, 158 U. S. 601 (1895).

*Fuentes* was before us, and waited a brief time for reargument before a full Court, whatever its decision might have been, I venture to suggest that we would not be immersed in confusion, with *Fuentes* one way, *Mitchell* another, and now this case decided in a manner that leaves counsel and the commercial communities in other States uncertain as to whether their own established and long-accepted statutes pass constitutional muster with a wavering tribunal off in Washington, D. C. This Court surely fails in its intended purpose when confusing results of this kind are forthcoming and are imposed upon those who owe and those who lend.

5. Neither do I conclude that, because this is a garnishment case, rather than a lien or vendor-vendee case, it is automatically controlled by *Sniadach*. *Sniadach,* as has been noted, concerned and reeks of wages. North Georgia Finishing is no wage earner. It is a corporation engaged in business. It was protected (a) by the fact that the garnishment procedure may be instituted in Georgia only after the primary suit has been filed or judgment obtained by the creditor, thus placing on the creditor the obligation to initiate the proceedings and the burden of proof, and assuring a full hearing to the debtor; (b) by the respondent's statutorily required and deposited double bond; and (c) by the requirement of the respondent's affidavit of apprehension of loss. It was in a position to dissolve the garnishment by the filing of a single bond. These are transactions of a day-to-day type in the commercial world. They are not situations involving contracts of adhesion or basic unfairness, imbalance, or inequality. See *D. H. Overmyer Co.* v. *Frick Co.,* 405 U. S. 174 (1972); *Swarb* v. *Lennox,* 405 U. S. 191 (1972). The clerk-judge distinction, relied on by the Court, surely is of little significance so long as the court officer is not an agent of the creditor. The Georgia system, for me, affords commercial entities all the protection

that is required by the Due Process Clause of the Fourteenth Amendment.

6. Despite its apparent disclaimer, the Court now has embarked on a case-by-case analysis (weighted heavily in favor of *Fuentes* and with little hope under *Mitchell*) of the respective state statutes in this area. That road is a long and unrewarding one, and provides no satisfactory answers to issues of constitutional magnitude.

I would affirm the judgment of the Supreme Court of Georgia.

MR. CHIEF JUSTICE BURGER dissents for the reasons stated in numbered paragraph 5 of the opinion of MR. JUSTICE BLACKMUN.