338 So.2d 1067 (1976)
UNIQUE CATERERS, INC., Etc., Appellant,
v.
RUDY'S FARM COMPANY, Etc., Appellee.
No. 48032.
Supreme Court of Florida.
September 23, 1976.
Rehearing Denied November 22, 1976.
Seymour Kaplan of Heller & Kaplan, Miami, for appellant.
Lucien C. Proby, Jr., of Pallot, Stern, Proby & Adkins, Miami, for appellee.
Robert L. Shevin, Atty. Gen., and Thomas A. Harris, Asst. Atty. Gen., for the State of Florida, intervenor.
*1068 BOYD, Justice.
We have for our review an order of the Circuit Court, Eleventh Judicial Circuit, in which the court acting in its appellate capacity passed on the constitutional validity of Chapter 76, Florida Statutes, upholding it as constitutional. We have jurisdiction.[1]
Rudy's Farm Company filed a complaint on an account stated against Unique Caterers, Inc., a Florida corporation, in the County Court in and for Dade County, Florida. Attached to the complaint was a copy of a statement supported by invoices which showed a debt owed to Rudy's Farm by Unique of $1,630.61. Recovery of this amount plus interest was sought in the complaint.
At the same time the complaint was filed a Motion for Issuance of a Writ of Attachment was filed[2] pursuant to Section 76.09, Florida Statutes. The motion was not supported by an affidavit, nor is an affidavit required under the statute. A writ of attachment was issued by the Clerk of the County Court ordering the seizure of so much of the property of Unique Caterers as would satisfy a judgment of $1,630.61. Sufficient personalty of the defendant was seized by the Sheriff of Dade County. A Motion to Dissolve Attachment was denied by the County Court and the cause proceeded to trial before a jury. A directed verdict was entered by the trial court in favor of the plaintiff. Defendant appealed both the denial of its dissolution motion, claiming Chapter 76, Florida Statutes, to be unconstitutional, and the judgment for plaintiff to the Circuit Court, whose order we now review.
The order affirmed the judgment and found Chapter 76 to be constitutional. Our review of the record reveals no basis for reversing the Circuit Court's affirmance of the judgment. The constitutionality of Chapter 76 presents a much more difficult issue.
The question before us is whether the procedures of Florida's attachment statute, Chapter 76, Florida Statutes, violate the United States Constitution's Fourteenth Amendment guarantee that no state shall deprive any person of property without due process of law.
For many years the commercial statutes of the states were thought to be unassailable by due process attacks. Consistent with this view the Supreme Court of the United States upheld prejudgment attachment statutes. McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929); Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921). But recently the concepts of due process have been expanded by the United States Supreme Court and the expansion entered the field of commercial law in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). There it was held that, absent prior notice and hearing, prejudgment garnishment procedures violate fundamental principles of due process. The Court seemed to be limiting its holding to garnishment,
"We deal here with wages  a specialized type of property presenting distinct problems in our economic system." Id at 340, 89 S.Ct. at 1822.
Nevertheless Sniadach opened the door to due process attacks on commercial statutes which protect creditors by prejudgment deprivation of a debtor's property.
The concept of procedural due process as it relates to commercial statutes was further expanded in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), where the replevin statutes of this State and Pennsylvania came under attack. The statutes authorized the summary seizure of *1069 goods and chattels upon the ex parte application of a person out-of-possession who claimed a right to them and posted a security bond. The core of procedural due process was stated to be that parties whose rights are affected are entitled to be heard, which includes the right to notice, and that hearing and notice rights must be meaningful both as to time and manner. The purpose of meaningful notice and hearing was said to be to minimize unfair or mistaken deprivation of property, and this purpose applied to not just the "necessities of life" as Sniadach might have indicated but to "property" generally. Meaningful notice and hearing was determined to be prior hearing and notice, where replevin was concerned, and so the replevin statutes of this State and Pennsylvania which did not provide for prior hearing were held to work a deprivation of property without due process of law. The power of the State to seize goods before final judgment in order to secure creditors' interests was not questioned as long as the claims were tested in a fair prior hearing. The Court recognized that there are extraordinary circumstances which justify postponement of notice and hearing but the examples cited by the Court: collection of internal revenue of the United States; fulfilling needs of a war effort; protection against a bank failure, misbranded drugs or contaminated food; are, as described by the Court, "truly unusual." Id at 90, 92 S.Ct. 1983.
Were we afforded only Fuentes as authority for decision in this case we would probably hold the challenged attachment statute unconstitutional for failure to require prior notice and hearing, even though such a holding might seem to defeat, in part, the remedy the statute offers. The grounds on which a writ of attachment will issue[3] do not seem to fit into those "extraordinary circumstances" which justify postponement of an opportunity to be heard, though it might be noted that the Court referred to immediate danger that a debtor will destroy or conceal disputed goods as an unusual situation. Id at 93, 92 S.Ct. 1983. At any rate, the Court has handed down two post-Fuentes decisions which appear to initially recede from and then partially revive Fuentes: Mitchell v. W.T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and North Georgia Finishing Inc. v. Di-Chem Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Their effect on "prior hearing" requirements is not crystal clear. Requirements of prior hearing aside, it is clear that an objectionable aspect of the Fuentes replevin statutes was that a private party could invoke the statute unilaterally, without any review by a state official and this objection to prejudgment lien statutes was voiced again by the Court in Mitchell.
In Mitchell the issue was whether notice or hearing was required before sequestration of the property of a debtor sold under an installment sales contract by a creditor who retained a vendor's lien in the property under State law. Premising its opinion on the fact that both the seller and the buyer had current, real interests in the property the Court upheld the sequestration and, in *1070 the process, the sequestration procedure on its face, as well. The Court found the Louisiana sequestration statute to meet constitutional muster in five significant ways: 1) the writ would not issue unless it was supported by an affidavit which clearly demonstrated the grounds for sequestration; 2) the writ would not issue in the Louisiana parish in which the case arose unless authorized by a judge to whom a clear showing of the grounds for issuance was made; 3) the creditor was required to post a bond; 4) the debtor could regain his property by posting a bond sufficient to protect the interests of the creditor; 5) the debtor was entitled to an immediate post-seizure hearing, at which the creditor would have the burden or proving the grounds upon which the writ issued. Special emphasis appears to have been placed on the immediate post-seizure hearing which would minimize, as much as possible, the impact of unfair deprivation.
In his concurring opinion in Mitchell Justice Powell noted that Fuentes was implicitly overruled and Justice Stewart, the author of Fuentes agreed. Both were to retract the Fuentes death knell in North Georgia Finishing, supra.
In North Georgia Finishing a corporate defendant's bank account was garnished under a state statute which permitted a clerk of the court, or some other officer authorized to issue an attachment, to issue the writ of garnishment if supported by an affidavit which states the plaintiff has reason to expect loss of the amount claimed due. The only method open to the defendant for dissolving the writ was by filing a bond. Without such a bond, the defendant would be deprived of the property pending the litigation because there was no provision for an early hearing. The Court stated the Georgia statute was vulnerable under the Fourteenth Amendment's Due Process Clause for the same reasons as were the Fuentes replevin statutes, no "opportunity for an early hearing," nor participation by a "judicial officer." Id at 606, 95 S.Ct. 719.
In light of the reliance of North Georgia Finishing on Fuentes the question is when are prior hearings in attachment proceedings required by the Due Process Clause. Reference to prior hearings is conspicuously absent in the majority opinion in North Georgia Finishing. Perhaps a secret ex parte hearing before a judicial officer prior to issuance of the writ without notice to the creditor would aid in balancing debtor and creditor interests because such a hearing would best minimize the chance of unfair deprivation without giving the debtor the chance, by concealing the property or removing it from the jurisdiction, to defeat the remedy which the statute is designed to offer. At any rate, it is clear that due process requires an early hearing, which we believe in prejudgment attachment cases should be an immediate post-seizure hearing, at which the debtor has an opportunity to be heard and at which the creditor "would be required to prove at least probable cause," Id. at 607, 95 S.Ct. at 723, for the attachment. We believe such a hearing would be "meaningful" enough to satisfy Fuentes. It is also clear that the saving characteristics of the Louisiana statute in Mitchell will aid in protecting an attachment statute from a due process attack. Those characteristics are: judicial participation, a supporting affidavit clearly setting out the grounds for issuance of the writ, an immediate post-seizure hearing following which the writ will be dissolved absent proof by the creditor of the grounds on which the writ issued, and posting of bond by the plaintiff, as well as opportunity to post bond by the defendant.
Additionally, we have for our guidance the recent United States Supreme Court opinion in Carey v. Sugar, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976). The Court had for its review a federal district court decision declaring New York's attachment statute unconstitutional. The case was remanded to the district court to abstain from a decision until the parties had an opportunity to obtain a construction from the New York courts which might save an otherwise unconstitutional statute.
Try as we might we are unable to construe this State's attachment statute so *1071 that it would be constitutional under present concepts of procedural due process, as we understand them. Fortunately, the statute requires bond before the writ may issue[4] and permits the property to be returned upon bond by the debtor.[5] We do not believe that notice and hearing prior to attachment is required in order to satisfy the demands of due process. Otherwise the remedy of the statute is likely to be defeated. However, under the standards set by the United States Supreme Court the statute is constitutionally deficient in the following respects: the statute does not require that a judge issue the writ;[6] nor does it require a supporting affidavit when the debt is alleged to be due;[7] the writ, in such an instance, may issue on a conclusory allegation by the creditor that he believes in the existence of one of the grounds for attachment in Section 76.04, Florida Statutes;[8] most seriously the statute does not require an immediate post-seizure hearing, rather it simply keeps the court open at any time to hear dissolution motions.[9] It might be noted that at the dissolution hearing, the burden of proof is properly on the creditor/plaintiff.[10]
The commercial law of this State must keep up with the concepts of procedural due process as they are refined by the United States Supreme Court. The interests of those whose property may be mistakenly attached are entitled to as much protection as possible without defeating the interests of creditors.
For the reasons stated the judgment is affirmed; Chapter 76, Florida Statutes, to the extent it provides for attachment prior to judgment, is declared unconstitutional, and the attachment dissolved without prejudice *1072 to plaintiff to enforce the judgment through appropriate post-judgment proceedings. The cause is remanded to the Circuit Court, Eleventh Judicial Circuit, for proceedings consistent with this opinion.
It is so ordered.
OVERTON, C.J., and ENGLAND and HATCHETT, JJ., concur.
ROBERTS, ADKINS and SUNDBERG, JJ., dissent.
Rehearing denied; OVERTON, C.J., BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ROBERTS and ADKINS, JJ., dissent.
NOTES
[1] Article V, Section 3(b)(1), Florida Constitution.
[2] The Motion stated that the defendant owed the plaintiff $1,630.61, plus interest from January 25, 1973, and as grounds for the Motion that movant had reason to believe: (a) the defendant is actually removing all his property to New Jersey in order to continue doing business there; (b) all officers, directors and stockholders reside out of the state.
[3] 76.04 Grounds when debt due.  The creditor may have an attachment on a debt actually due to him by his debtor, when the debtor:

(1) Will fraudulently part with his property before judgment can be obtained against him.
(2) Is actually removing his property out of the state.
(3) Is about to remove his property out of the state.
(4) Resides out of the state.
(5) Is actually moving himself out of the state.
(6) Is about to move himself out of the state.
(7) Is absconding.
(8) Is concealing himself.
(9) Is secreting his property.
(10) Is fraudulently disposing of his property.
(11) Is actually removing himself beyond the limits of the judicial circuit in which he resides.
(12) Is about to remove himself out of the limits of such judicial circuit.
76.05 Grounds when debt not due.  Any creditor may have an attachment on a debt not due, when the debtor:
(1) Is actually removing his property out of the state.
(2) Is fraudulently disposing of his property to avoid the payment of his debts.
(3) Is fraudulently secreting his property to avoid payment of his debts.
[4] 76.12 Attachment bond.  No attachment shall issue until the person applying for it, his agent or attorney, makes a bond with surety to be approved by the clerk payable to defendant in at least double the debt demanded conditioned to pay all costs and damages which defendant sustains in consequence of plaintiff's improperly suing out the attachment. In foreclosure of a mortgage on personal property if the motion states that the property or part of it has been disposed of without the consent of the party holding the mortgage and that plaintiff does not know who has the property or part of it, the bond shall be made payable to the state for the use and benefit of all parties interested, conditioned to pay all costs and damages which are sustained in consequence of plaintiff's improperly suing out the attachment. Any party aggrieved may sue on the bond but the state is not liable for any costs, damages or expenses that are incurred. Any bond in attachment is not void as against the obligors, nor are they discharged therefrom on account of any informality, although the attachment is dissolved because of the informality.
[5] 76.18 Return of property upon forthcoming bond.  At any time property attached may be restored to defendant or some other person for him on defendant or such other person giving bond with surety to the officer levying the attachment to be approved by the officer payable to plaintiff in double the value of the property levied on if the property value does not exceed the amount of plaintiff's claim, or double the amount of plaintiff's claim if the value of the property exceeds the amount of plaintiff's claim, the value to be fixed by the officer, conditioned for the forthcoming of the property restored to abide the final order of the court.
[6] 76.03 Courts from which attachments shall issue.  Attachments shall issue from the court which has jurisdiction of the amount claimed by the creditor but if the property to be attached is being actually removed from the state and the creditor is unable to obtain process from the proper court in time to prevent such removal, any judge may issue the writ, making it returnable to the proper court and immediately sending all papers in the action to the clerk of the court to which the writ is returnable.
[7] 76.09 Motion when debt due.  When the debt is actually due, the motion shall state the amount of the debt that is actually due, and that movant has reason to believe in the existence of one or more of the special grounds in § 76.04, stating specifically the grounds.
[8] See Note 3.
[9] 76.24 Dissolution of attachment. 

(1) The court to which the attachment is returnable is always open to hear motions to dissolve the attachment.
[10] 76.24 Dissolution of attachment. 

* * * * * *
(2) On answer by defendant that any allegation in plaintiff's motion is untrue, this issue shall be tried. If the allegation in plaintiff's motion which is denied is not proved to be true, the attachment shall be dissolved.