344 So.2d 568 (1977)
Harrop B. PHILLIPS and Anor R. Phillips, d/b/a A & H Industrial Park, Appellants,
v.
GUIN & HUNT, INC., Appellee.
No. 49358.
Supreme Court of Florida.
March 31, 1977.
*569 Byron R. Carter, Orlando, for appellants.
James R. Monroe and Jeffry R. Jontz of Young, Turnbull & Linscott, Orlando, for appellee.
SUNDBERG, Justice.
This cause is before us to review an order of the Orange County Circuit Court in which that court acting in its appellate capacity passed on the constitutional validity of Chapter 83, Florida Statutes. Jurisdiction vests in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution.[1]
*570 Appellants/landlords filed a distress for rent claim under Section 83.11, Florida Statutes (1975), along with an affidavit in support of the claim. They posted a distress bond for twice the value of the property sought to be levied upon. In accordance with Sections 83.12 and 83.13, Florida Statutes, a deputy clerk of Orange County, Florida, issued a distress writ without a judicial order. The Orange County Sheriff's Department then executed the writ by posting a copy on the door of the premises which appellee, a Florida corporation, leased from appellants. The property was used to store materials and was infrequently visited by appellee. Appellee was not personally served with any of the aforementioned papers although appellants knew its principal place of business was in Pensacola, Florida. When appellee failed to answer the complaint within 20 days after posting of the writ, default was entered, and a writ of execution was issued. Subsequently, appellee's motions to stay execution and to set aside default were denied, as was its motion for rehearing. Appellee then appealed the entry of the final judgment and the denial of post-judgment motions to the Orange County Circuit Court. That court reversed the trial court's decision and held that Sections 83.08, 83.09, and 83.11-.19, Florida Statutes, were unconstitutional, relying on the United States Supreme Court decision in North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975).
We are now asked to consider whether that court erred in declaring sections of Chapter 83 unconstitutional as violative of the due process clause in the United States Constitution. In light of recent judicial treatment regarding prejudgment procedures, we find that the circuit court was correct in ruling that Sections 83.11, 83.12, and 83.14-.19, Florida Statutes, failed to pass constitutional muster. However, we find Section 83.13 constitutional on its face though unconstitutional as applied in the court below.
American society relies on judicial machinery for an orderly and systematic settlement of disputes. Individual rights and duties must be determined in such an objective manner or their resolution would produce anarchy, riot, and Darwinian survival. Recognizing such possibilities, the framers of the Constitution cloaked the document with notions of due process. Without this guarantee of due process to safeguard individual rights, the state's omniscient power to resolve conflict would be unbridled. Only through a guarded due process clause, whose meaning is continually refined to satisfy contemporary needs, could we aspire to a society which is both ordered and just.
From its early history, the American judicial system recognized that before property rights can be affected by judicial powers, the owner of those rights is entitled to be heard. Rees v. Watertown, 86 U.S. (19 Wall.) 107, 22 L.Ed. 72 (1874); Ray v. Norseworthy, 90 U.S. (23 Wall.) 128, 23 L.Ed. 116 (1875); Windsor v. McVeigh, 93 U.S. (3 Otto) 274, 23 L.Ed. 914 (1876); Central of Georgia R.R. v. Wright, 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134 (1907). "Common justice requires that no man shall be condemned in his person or property without notice and an opportunity to make a defense." Baldwin v. Hale, 68 U.S. (1 Wall.) 233, 17 L.Ed. 531 (1864).
Although this principle was embodied in our early case law, the courts later upheld the interests of creditors who demanded quick and effective remedies. With deference toward these interests, the United States Supreme Court frequently upheld prejudgment statutes. Coffin Bros. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928); Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921).
As the American economy continued to expand and depend on a massive and complicated system of credit, the courts began *571 to reevaluate the rights and duties of interested parties. In Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the court studied the constitutionality of a Wisconsin statute that provided for prejudgment garnishment of wages. Garnishment under the Wisconsin law involved: (a) a request by the garnishor's attorney; (b) made to a court clerk; (c) resulting in a summons being issued; (d) which the garnishor's attorney served on the garnishee; and (e) which required notice to be given to the debtor within 10 days. The debtor could unfreeze garnished wages by posting bond. Wis. Stat. § 267.01 et seq. (1957). The court held the Wisconsin statute unconstitutional because it failed to provide for notice and hearing prior to the taking. The court, however, specifically limited its holding to the garnishment of wages. Sniadach, supra, at 340, 89 S.Ct. 1820.
This limitation was shortlived because Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), was forthcoming. The Fuentes Court stated unequivocally that an opportunity for a hearing is required prior to the taking of any property right. Florida and Pennsylvania laws permitting replevin upon ex parte application to a court clerk and filing of bond for double the value of the property to be seized were invalidated. The defendant could post his own security bond for double the value within three days of the writ's execution and thereby regain possession of the property. If he failed to follow such procedure, the property was transferred to the party seeking the writ. The defendant was not entitled to challenge the issuance of the writ. Denouncing both statutes for failing to balance the competing interests of the parties, the Court announced the broad rule that, except in extraordinary situations, a defendant must have notice and opportunity for a hearing before he may be deprived of any significant property interest. Fuentes allowed postponement of the required notice and hearing under these conditions: (1) the deprivation must be directly necessary to secure an important governmental or general public interest; (2) prompt action must be imperative; (3) the state must strictly control its exercise of legitimate force. The Court noted that such circumstances were highly unusual. Fuentes, supra, at 90, 92 S.Ct. 1983.
The lesson of Fuentes is clear. A deprivation of any significant property interest will come under constitutional scrutiny. The Fuentes case is not limited to replevin, but its rationale encompasses any procedure which allows for a deviation from the constitutional requirements of the due process notion. The Court left to subsequent cases the task of clarifying the mechanics for the hearing mandated.
In Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), and North Georgia Finishing, Inc. v. Di-Chem, Inc., supra, the Court elucidated the hearing requirement. The Supreme Court, in Mitchell, upheld the constitutionality of Louisiana's sequestration procedure. Balancing the debtor's interest in the sequestered goods with the creditor's interest in protecting his security, the opinion concluded that the procedure constitutionally protects both. The Court found that a proper balancing occurs when (1) a judge is satisfied that the writ should issue, (2) the party seeking to invoke state action posts a bond to guarantee the interests of the creditor, and (3) without undue delay, there is a full hearing as to the right of possession. The Court determined that an opportunity for a hearing need not precede any actual deprivation of property, distinguishing Sniadach as dealing with a specialized type of property and applying to cases where the creditor had no prior interest in the property.
In North Georgia Finishing, Inc. v. Di-Chem, Inc., supra, the Supreme Court applied Mitchell in striking down Georgia's garnishment statute as applied to commercial accounts. The opinion reiterated the Mitchell factors: the need for a judge; allegation of specific facts; the requirement of an immediate hearing to dissolve a writ; and a prompt hearing on the merits, though not necessarily a pre-deprivation hearing. North Georgia Finishing, supra, 419 U.S. at *572 606-607, 95 S.Ct. 719. Thus, the Court made a limited return to balancing with respect to the timing of proceedings.
A cumulative analysis of the cases noted suggests that due process safeguards will vest anytime there is a deprivation of any significant property interest. Whether a particular state statute providing for summary deprivation will satisfy those constitutional safeguards is to be judged against the requirements enunciated in Mitchell and North Georgia Finishing.
This Court has not been insensitive to the dictates of the United States Supreme Court. Recently, in Unique Caterers, Inc. v. Rudy's Farm Company, Fla., 338 So.2d 1067, we held Chapter 76, Florida Statutes, unconstitutional as violative of due process to the extent it provides for attachment prior to judgment without procedural safeguards mentioned therein.[2] Today, we find that Sections 83.11, 83.12, and 83.14-.19, Florida Statutes, are unconstitutional because they fail to comport with contemporary concepts of due process. Under the standards articulated in Mitchell and North Georgia Finishing, the statute is inadequate on its face because: (1) it does not provide the right to a hearing promptly after the issuance of the writ nor even before the property is levied upon; and (2) it does not provide for issuance of the writ by a judicial officer rather than a clerk of court or, in lieu thereof, by a clerk who makes an independent factual determination that the statute has been complied with.[3]
The statute is also unconstitutional as applied by the county court because the appellee did not receive service of process upon its person when it could be found within the state of Florida. This service was required before proceedings culminating in judicial sale of appellee's property could be maintained.[4] The right to be heard has little value if one is not informed that a matter is pending. Due process requires that interested parties by apprised of the pendency of an action through a procedure reasonably calculated to convey the required information. Mullane v. Central *573 Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1947).
Section 83.13, Florida Statutes,[5] provides for service by posting "if the defendant cannot be found." In the instant case, the county court approved constructive service by levy upon the property even though the defendant "[could have been] found" within the state of Florida to effect personal service of the writ. Appellee maintains that the phrase "if the defendant cannot be found" refers to found within the county where the property is located. It then concludes that the procedure embodied in Section 83.13, Florida Statutes, is unconstitutional vel non because it condones constructive service where the defendant may be within the state of Florida and susceptible to personal service. We do not accept such interpretation when the statutory section can just as reasonably be construed to authorize constructive service only when the defendant, through diligent search and inquiry, cannot be found within the state of Florida, and that fact is made to appear in the same manner as required for constructive service under Chapter 49, Florida Statutes. If the statute is not so interpreted, it does not comply with the constitutional tests enunciated by the United States Supreme Court in Fuentes-North Georgia Finishing line of cases. However, such a construction is mandated because it is axiomatic that courts will construe a statute, if at all possible, to uphold its constitutionality. City of Dunedin v. E.W. Bense, 90 So.2d 300, 303 (Fla. 1956); Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965).
In the case sub judice, appellee is a Florida corporation with a resident agent. Appellants knew the location of appellee's business but failed to have it served. Due process clearly dictated personal service upon the appellee.
Assuming the defendant cannot be found within the state of Florida, Section 83.13, Florida Statutes, states that "the levy on the property suffices as service on him."[6] In Grisson v. Dade County, 293 So.2d 59 (Fla. 1974), we suggested that the Legislature could constitutionally authorize alternative procedures for giving notice where personal service was impossible. See also Sheppard v. Sheppard, 329 So.2d 1 (Fla. 1976). The constitutionality of the Legislature's methodology depends on whether it is reasonably calculated to give notice of the pending action. Mullane v. Central Hanover Bank & Trust Co., supra. We hold that it does. In Sheppard v. Sheppard, supra, we stated:
"Publication of notice in a newspaper may be no more effective than publication by posted notice, particularly in less populated areas of the State where gossip induced by the posting might possibly bring the matter to the defendant's attention." Id. at 2-3.
Here the levy on the property is more than likely to guarantee actual notice and is reasonably calculated to achieve the intended purpose.
While this alternative procedure is constitutionally permissible, implicit in the statute is the notion that posting can only be employed where the plaintiff has given a sworn statement alleging service upon the person to be impossible. This procedure is required by Section 49.041, Florida Statutes, when service by publication is substituted for personal service of process. As service by posting is merely an alternative to serve by publication, the necessity of filing an affidavit is still viable.
Were the service of process deficiency described above the only impediment in our distress statute, the construction we have placed on Section 83.13, Florida Statutes, would save the statute. However, under United States Supreme Court guidelines, it is clear that the deprived party has a right to a hearing. The statute in question provides no such right. We read North Georgia Finishing, supra, and Mitchell, supra, to require a hearing either before the alleged taking or promptly thereafter. In *574 Unique Caterers v. Rudy's Farm Co., supra, we found Chapter 76 constitutionally deficient because it did not require an immediate post-seizure hearing. Rather, it simply kept the court open at anytime to hear motions for dissolution. Unique Caterers, supra, 338 So.2d at 1071. Under Chapter 83, Florida Statutes, even this safeguard is not available.
Finally, it is constitutionally imperative that a writ issue only after an impartial factual determination is made concerning the existence of the essential elements necessary for issuance of the writ. Consequently, a writ must be issued by a judicial officer based upon a prima facie showing rather than pro forma by the clerk of court, unless the initial pleading is made under oath to a clerk who makes an independent factual determination that the requirements of the statute have been complied with.[7] Only then can the individual have his use and enjoyment of property protected from arbitrary encroachment. Under Section 83.12, Florida Statutes,[8] the distress writ is issued by the clerk based upon an unverified complaint without the necessity of a preliminary factual determination as to the validity of the claim.[9]
For the reasons stated herein, the judgment of the circuit court declaring Sections 83.11, 83.12 and 83.14-.19, Florida Statutes, unconstitutional is affirmed. We find no constitutional violation in Sections 83.08-.09, Florida Statutes, which merely create a lien, and we find Section 83.13 as herein construed unconstitutional only as applied to the appellee in this case. The cause is remanded to the trial court for disposition in accordance with the decision of this Court.
It is so ordered.
OVERTON, C.J., ADKINS, BOYD, ENGLAND, HATCHETT and DREW (RETIRED), JJ., concur.
NOTES
[1] It is not clear that the circuit court "initially and directly [passed] on the validity of a state statute" within the purview of Art. V, § 3(b)(1), in that the issue of the constitutional validity of Ch. 83, Fla. Stat., was raised by appellee on motion for rehearing in the county court. However, if the county court did, in fact, initially pass upon the constitutional validity of the statute in question, appeal would lie in this Court from the ruling of that court, so we deem the jurisdictional issue to be moot.
[2] Other courts have shown discomfort with prejudgment statutes. A United States District Court in the Middle District of Florida, in the case of MacQueen v. Lambert, 348 F. Supp. 1334 (M.D., Fla. 1972), held unconstitutional a Florida statute which permitted the landlord to summarily dispossess the tenant and assert a lien against the tenant's property for nonpayment of rent without notice. §§ 713.67-.69, Fla. Stat. A federal court in Pennsylvania recently found that state's distress for rent statute unconstitutional because it failed to satisfy notions of due process. That statute was similar to Florida's. In Hall v. Garson, 468 F.2d 845 (5th Cir.1972), the Fifth Circuit declared unconstitutional a Texas statute giving the landlord a lien on personal goods of tenants and authorizing the landlord to enforce a lien by preemptory seizure of property. The statute violated due process insofar as it denied the right to be heard prior to chattels being taken from their possessor.

In Adams v. Joseph F. Sanson Investment Co., 376 F. Supp. 61 (Nev. 1974), a landlord lien statute of Nevada was declared to be unconstitutional on due process grounds insofar as it fails to allow for a hearing prior to the seizure of one's personal property.
[3] § 83.12, Fla. Stat., provides as follows:

"Distress for rent; form of writ.  On filing the complaint, the clerk shall issue a distress writ commanding the sheriff to levy on property liable to be distrained for rent or advances, and to collect the amount claimed, or the value thereof, and to summon defendant to answer the complaint. Before the writ issues, plaintiff, his agent or attorney, shall file a bond with surety to be approved by the clerk payable to defendant in at least double the sum demanded, or if property, in double the value of the property sought to be levied on, conditioned to pay all costs and damages which defendant sustains in consequence of plaintiff's improperly suing out the distress."
[4] § 83.13, Fla. Stat., provides as follows:

"Distress for rent; levy of writ.  The officer shall execute the writ by service on defendant and by levy on property distrainable for rent or advances, if found in his jurisdiction. If the property is not so found but is in another jurisdiction, he shall deliver the writ to the proper officer in the other jurisdiction and the other officer shall execute the writ by levying on said property and delivering it to the officer of the court in which the action is pending to be disposed of according to law unless he is ordered by the court from which the writ emanated to hold the property and dispose of it in his jurisdiction according to law. If defendant cannot be found, the levy on the property suffices as service on him."
[5] Id.
[6] Id.
[7] In Shadwick v. City of Tampa, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), a city charter provision authorized municipal court clerks to issue arrest warrants for breach of municipal ordinances. The United States Supreme Court held this provision to comport with the requirements of the Fourth Amendment that warrants be issued by a neutral and detached magistrate who must be capable of determining whether probable cause exists for issuance of the warrant. The clerks were qualified to make this determination because they worked within the judicial branch under the supervision of municipal court judges. If a clerk can make an initial determination as to probable cause in a criminal proceeding, it is certainly constitutionally permissible for him to make an initial determination regarding the issuance of a distress writ.
[8] See note 3, supra.
[9] In the instant cause, appellants filed an affidavit in support of their claim. The statute is nevertheless deficient on its face in that it makes no provision for a sworn statement before the issuance of a distress writ. We note that an affidavit was an express requirement of the statute's predecessor. In amending the statute in 1967 to read in its present form, the Legislature eliminated the necessity of an affidavit. After 1967: Ch. 67-254, § 34, Laws of Florida. In its place, they substituted only the requirement of an unverified complaint.