**DREWRY v. THOMPSON DOOR COMPANY, Inc., et al.**

No. 76-16950.

Circuit Court, Broward County.

May 30, 1978.

William A. Friedlander of Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wolff, Miami, for the plaintiff.

Russell L. Forkey of Forkey & Kirsch, Fort Lauderdale, for defendants Paley & Tucker.

STEPHEN R. BOOHER, Circuit Judge.

*Amended and restated final summary judgment of replevin:* This cause came on for hearing upon the motion of plaintiff, Edwin C. Drewry, for a final summary judgment of replevin as prayed for in Count I of his first amended and supplemented complaint. The court has made an exhausting review of the extensive court file in this case, including the pleadings, depositions, interrogatory answers, affidavits and exhibits attached thereto, and has heard the arguments of counsel for both parties. Based upon the foregoing, and upon the findings of fact and conclusions

of law set forth below, the court has determined that there are no disputed issues of fact remaining to be tried with respect to Count I of plaintiff's first amended and supplemented complaint, and that plaintiff is entitled to a final summary judgment of replevin as a matter of law.

This litigation involves the competing legal rights and interests of plaintiff Edwin C. Drewry and defendants Paley & Tucker in an inventory of plywood and hard wood "doorskins" which were previously stored in a warehouse owned by defendants Paley & Tucker and located in Deerfield Beach, Florida. Plaintiff claimed an ownership interest in certain of the doorskins and a perfected security interest in the remaining doorskins by virtue of his contractual arrangements with Thompson Door Company, Inc., a bankrupt corporation which had maintained its manufacturing facilities within the warehouse owned by defendants Paley & Tucker. Paley & Tucker have maintained throughout this litigation that they had a valid landlord's lien in the subject doorskins, which lien was prior and superior in dignity to the ownership interest or security interest of plaintiff Edwin C. Drewry in the same property.

On September 14, 1976 defendants Paley & Tucker commenced an action against Thompson Door Company, Inc. for failure to pay rent under a lease agreement relating to the subject warehouse (Case No. 76-14792). In connection therewith, and at the instance of Paley & Tucker, the clerk of the circuit court of Broward County issued a distress writ in favor of Paley & Tucker and against Thompson Door Company, Inc. wherein the sheriff of Broward County was commanded to levy upon the property of Thompson Door Company, Inc. located in the subject warehouse, including the doorskins in which plaintiff Edwin C. Drewry claimed an interest. It is notable that the aforementioned distress writ was issued pursuant to the statutory procedures outlined in §83.11 through §83.19, Florida Statutes, which provisions have been declared unconstitutional by both federal and state courts. See *Phillips v. Guin & Hunt, Inc.,* 344 So.2d 568 (Fla. 1977); *Stroemer v. Shevin,* U.S.D.C. Southern Dist. Fla. (Case No. 72-1627 - Civ. - W.M.). The sheriff thereafter executed the writ by sealing the warehouse and precluding plaintiff Edwin C. Drewry and all others from obtaining access to the subject doorskins.

In response to the aforementioned actions of Paley & Tucker, plaintiff commenced the present action by filing a complaint naming both Thompson Door Company, Inc. and Paley & Tucker as

defendants, which complaint sought immediate possession of the subject doorskins pursuant to the provisions of Chapter 78, Florida Statutes. On October 21, 1976, this court entered an order to show cause setting a hearing for November 15, 1976, to determine the right of the plaintiff to obtain immediate possession of the subject doorskins. Counsel for the plaintiff and for defendants Paley &' Tucker appeared before the court on November 15, 1976, and entered into a stipulation wherein Paley & Tucker agreed that a writ of replevin would issue in favor of the plaintiff unless Paley & Tucker obtained and filed a bond in favor of plaintiff in the sum of $145,629 on or before November 29, 1976. It was further stipulated that the entire matter of the parties' respective interests in the subject doorskins would be litigated to a conclusion before this court if the bond were not timely filed and that defendants would dismiss the distress proceedings to facilitate such a result. Paley & Tucker failed to obtain and file the bond, and on December 7, 1976, this court entered an order directing the clerk of the circuit court of Broward County to issue a writ of replevin instructing the sheriff of Broward County to seize the subject doorskins and deliver possession of same to the plaintiff.

In accordance with their stipulation made in open court, Paley & Tucker filed a notice of partial dissolution of writ of distress on December 7, 1976, in Case No. 76-14792, and on the same date Judge John G. Ferris entered an order which released the subject doorskins from the restraints created by that court's prior orders.

Beginning on December 13, 1976, the sheriff of Broward County removed the subject doorskins from the warehouse owned by Paley & Tucker, and delivered them to Drewry in compliance with the writ of replevin issued by the clerk of the circuit court on December 7, 1976.

Subsequent to each of the above described occurrences, Drewry filed his first amended and supplemented complaint which contained two separate counts. The first count was nothing more than a restatement of plaintiff's replevin action commenced under Chapter 78, Florida Statutes. Count II was an action for wrongful distress against Paley & Tucker, seeking recovery for damages allegedly incurred by plaintiff as the result of the actions of Paley & Tucker in institiong the aforementioned distress proceedings. Paley & Tucker denied the substantive allegations of plaintiff's first amended and supplemented complaint, and raised the following affirmative defenses —

> (a) That the landlord's lien asserted by Paley & Tucker was superior to any interest of the plaintiff in the subject doorskins.

(b) That Paley & Tucker had no actual knowledge of the alleged interest of Drewry in the subject doorskins when the distress for rent proceeding was commenced.

(c) That Drewry had no standing to maintain the present action in that he had assigned his interest in the subject doorskins to Mitsui & Co. (U.S.A.).

(d) That plaintiff's sole remendy to recover possession of the subject doorskins was to intervene in the distress proceedings commenced earlier by defendants as permitted by §83.15, Florida Statutes.

In addition to the above described pleadings, Paley & Tucker have filed a counterclaim and an amended counterclaim against Drewry, the contents of which are not relevant for purposes of this discussion.

On November 1, 1977 Drewry filed a motion for partial summary judgment seeking a declaration by this court that his right to immediate and ultimate possession of the subject doorskins was prior and superior to any right, interest or lien of Paley & Tucker in or to the doorskins. In support of his motion, plaintiff submitted voluminous affidavits and exhibits which outlined in great detail the relationship of plaintiff to Thompson Door Company, Inc., and the basis upon which plaintiff's ownership interest and security interest in the subject doorskins arose. The only additional proof submitted —by defendants in opposition to plaintiff's motion for summary judgment (aside from the depositions, interrogatory answers and other discovery already contained in this court's file) was an affidavit of Alan Tucker dated January 26, 1978. Moreover, counsel for defendants acknowledged at the hearing on plaintiff's motion for summary judgment that defendants would be unable to submit any additional relevant evidence in support of their position on the replevin issue in the event that a trial were ordered, aside from evidence that might be adduced through cross-examination of plaintiff's witnesses. It must be noted that defendants had already deposed Drewry on two occasions prior to the summary judgment hearing, and that they had been given ample opportunity to depose plaintiff's remaining witness but had declined to do so, it being apparent that further discovery would not have produced additional relevant evidence.

The affidavit of Alan Tucker contains only two paragraphs which relate either directly or indirectly to plaintiff's right to immediate and ultimate possession of the subject doorskins. At paragraph 8 of the affidavit defendant Alan Tucker states "that to the best of your affiant's knowledge and belief Thompson Door Compny, Inc. did not attempt to segregate the inventory of the

plaintiff, Edwin C. Drewry, until on or about September of 1976." At paragraph 13, Tucker states "that at the time of the institution of the above referenced action against Thompson Door Company, Inc., and the issuance, incidental thereto, of the above referenced distress writ, your affiant and Sidney Paley had no knowledge of the alleged fact that title to the subject doorskins was vested in' Edwin C. Drewry d/b/a Drewry International and that said party had an immediate right of possession thereto. Your affiant and Sidney Paley were of the belief that the subject doorskins were the property of Thompson Door Company, Inc." Paragraph 8 of the Tucker affidavit is of no value to defendants in that it fails to meet the requirements of Rule 1.510(e) of the Florida Rules of Civil Procedure since the allegation is clearly not based upon Tucker's personal knowledge. See *Waldo v. United States Ramie Corp.,* 74 So.2d 106 (Fla. 1954); *Silber v. Campus Sweater and Sportswear,* 313 So.2d 409 (1st D.C.A. 1975); *Garwood v. Equitable Life Assurance Soc. of U.S.,* 299 So.2d 163 (3d D.C.A. 1974); *United Bonding Ins. Co v. Aura-Stress, Inc,* 243 So.2d 244 (2d D.C.A. 1971); *Orthwein v. Cobbs Fruit & Preserving Co.,* 229 So.2d 607 (1st D.C.A. 1969). Moreover, the alleged failure of Thompson Door Company, Inc. to segregate plaintiff's doorskins within defendants warehouse is not relevant in view of the conclusion of law reached by this court in. paragraph 15 below. Nor do the contents of paragraph 13 of the Tucker affidavit provide any basis for denial of summary judgment on the replevin issue. The fact the defendants Paley & Tucker had no knowledge of plaintiff's interest in the doorskins when defendants caused them to be impounded may be relevant in subsequent proceedings on the question of wrongful distress (Count II of plaintiff's first amended and supplemented complaint). It is totally irrelevant, however, on the issue of plaintiff's right to immediate and ultimate possession of the doorskins. In view of the foregoing, plaintiff Edwin C. Drewry is entitled to a final summary judgment of replevin unless disputed issues of material fact can be found within the affidavits, exhibits, answers to interrogratories and deposition testimony of the plaintiff.

*Findings of undisputed fact*

1. Plaintiff Edwin C. Drewry is in the business of selling plywood and hard board doorskins to manufacturers of completed doors in various states.

2. Thompson Door Company Inc. was formerly in the business of manufacturing completed doors and selling them to third parties.

3. Defendants Paley & Tucker are the owners of a warehouse located at 1471 West Hillsborough Boulevard, Deerfield Beach, Florida.

4. During the year 1976, Thompson Door Company, Inc. occupied the aforementioned warehouse under a written lease agreement with defendants Paley & Tucker.

5. In March of 1973, Olinkraft, Inc. (herein "Olinkraft") and Thompson Door Company, Inc. entered into an agreement pursuant to which Olinkraft contracted to supply plywood doorskins to Thompson Door on consignment, and further agreed to finance the acquisition of plywood and hard board doorskins by Thompson Door from other suppliers. A true and correct copy of the agreement between Olinkraft and Thompson Door is attached to Drewry's affidavit as Exhibit A.

6. In connection with the agreement described in the preceding paragraph, Thompson Door and Olinkraft entered into a security agreement in March of 1973 pursuant to which Thompson Door granted a security interest to Olinkraft in the entire inventory of plywood and hard board doorskins then owned or thereafter acquired by Thompson Door. A true and correct copy of the security agreement in question is attached to Drewry's affidavit as Exhibit B.

7. On May 4, 1973, Thompson Door and Olinkraft caused a financing statement to be filed with the Secretary of State of the state of Florida under File No. 407411 to evidence the ownership interest and security interest of Olinkraft in the subject doorskins. A true and correct copy of the aforementioned financing statement is attached to Drewry's affidavit as Exhibit C. The financing statement in question named Olinkraft as secured party and Thompson Door as debtor, and described the collateral as follows—

> "All plywood and hard board doorskins consigned to, now owned, or hereafter acquired by Debtor, or in which Debtor has an interest. The collateral described secures future obligations. In addition, plywood and hard board doorskins are now and will from time to time hereafter be consigned by Secured Party to Debtor, and Secured Party will retain title to such doorskins in the possession of Debtor."

8. On February 10, 1976 Drewry purchased certain of the assets of Olinkraft. Included in such purchase was Olinkraft's entire right, title and interest in the aforementioned inventory of doorskins, and in the various consignment agreements and security agreements described in paragraphs 5 and 6 above. A true and correct copy of the contract of sale between Olinkraft and Drewry is attached to Drewry's affidavit as Exhibit E. As part of the sale, Olinkraft executed and delivered to Drewry an assignment of the financing statement described in paragraph 7 above, which assignment was contained on form UCC-3. The assignment was exe-

cuted by Thompson Door as debtor in order to acknowledge the transfer of all of Olinkraft's rights in the collateral to Drewry. The assignment was filed with the Secretary of State of the state of Florida on March 8, 1976, under File No. 655877. A true and correct copy of the assignment in question is attached to Drewry's affidavit as Exhibit F.

9. In February of 1976 Drewry entered into a series of financing transactions with Mitsui & Co. (U.S.A.), Inc. (herein "Mitsui"). The terms of the transactions were governed principally by a sales agency agreement, a true and correct copy of which is attached to Drewry's affidavit as Exhibit G. Under the terms of the sales agency agreement each of the following transactions occurred —

(a) Drewry sold all of his right, title and interest in the doorskins which he had acquired from Olinkraft to Mitsui for cash. Included therein were the doorskins located at the warehouse owned by defendants Paley & Tucker.

(b) Mitsui thereafter resold the subject doorskin inventory to Drewry on credit. To secure payment of the purchase price, Mitsui received a security interest in all of the doorskins owned by Drewry, which security interest was evidenced by the aforementioned sales agency agreement and by two security agreements dated February 10, 1976, true and correct copies of which are attached to Drewry's affidavit as Exhibits K and L. Moreover, Drewry executed and deliveretd to Mitsui an assignment of the financing statements described in paragraphs 7 and 8 above on form UCC-3, a true and correct copy of which is attached to Drewry's affidavit as Exhibit M. The aforementioned assignment was filed with the Secretary of State on March 8, 1976, under File No. 655878.

10. In April of 1976, Drewry entered into a new supply contract with Thompson Door to replace the old agreement between Olinkraft and Thompson Door which is described in paragraph 5 above. A true and correct copy of the new supply contract is attached to Drewry's affidavit as Exhibit N.

11. Prior to October 18, 1976, Thompson Door committed numerous acts of default under the supply contract with Drewry which are described in the preceding paragraphs. Such defaults included failure to make timely payments to Drewry for doorskins owned by him which had been incorporated by Thompson Door into finished doors and sold to third parties.

12. On October 18, 1976, Mitsui authorized Drewry to take any and all necessary legal action against Thompson Door with respect to the aforementioned defaults, including, but not limited

to, commencement of a replevin action to regain possession of all of the doorskins located within the subject warehouse.

13. On August 5, 1976, Drewry inspected the physical inventory of doorskins located in the subject warehouse. His inspection revealed that Thompson Door was maintaining a substantial inventory of doorskins behind a red line in a segregated area of the warehouse, and that such inventory was surrounded by numerous signs indicating that the doorskins were the property of Drewry.

14. From December 13th through December 15th, 1976, Drewry personally supervised the removal of the aforementioned doorskins from the subject warehouse by the sheriff of Broward County. Only those doorskins located behind the red line described above and in the segregated area of the warehouse were removed by the sheriff and given to the agents of Drewry.

### Conclusions of law

15. Plaintiff Edwin C. Drewry held a valid, perfected security interest in the inventory of doorskins removed from the subject warehouse by the sheriff of Broward County, having perfected same in accordance with the requirements of §672.326(c), §679.302, §679.303, §679.401, §679.402 and §679.405, Florida Statutes.

16. The security interest of Drewry in the subject doorskins attached prior to their delivery to the warehouse owned by Paley & Tucker. See §679.204(1), §671.201(44), and §672.501, Florida Statutes.

17. The security interest of Drewry in the subject doorskins was prior and superior to any lien acquired by Paley & Tucker by virtue of the failure of Thompson Door to pay rent under its lease. See §83.08(2), Florida Statutes.

18. Drewry had an absolute right to take possession of the inventory of doorskins upon the occurrence of a material event of default by Thompson Door and its failure to timely cure same. This right to take possession was clearly outlined in the agreements described in paragraphs 5, 6, and 10 above. See also §679.503, Florida Statutes.

19. Drewry was the real party in interest to commence an action for replevin of the subject doorskins upon the default of Thompson Door Company, Inc. The transactions between Mitsui and Drewry as outlined in paragraph 9 above did not divest Drewry of standing to commence the replevin action in the present case. To the con-

trary, the express provisions of the sales agency agreement between Mitsui and Drewry require that Drewry make collections from manufacturers and enforce his rights against collateral in the event of a default by such manufacturers. Moreover, the undisputed record in this case indicates that Mitsui gave sufficient authorization and direction to Drewry to commence the replevin action in the form of oral, written and telegraphic instructions. Nor is the language of the sales agency agreement which purports to retain title to the doorskins in Mitsui of any relevance. It is axiomatic that language retaining or reserving title to personal property in the seller after the goods are delivered to the buyer is limited in effect to a reservation of a security interest. See §672.401(1), Florida Statutes.

20. The actions of Paley & Tucker in precluding Drewry from removing the subject doorskins from the warehouse constituted a wrongful taking or detention of the doorskins as contemplated by Chapter 78, Florida Statutes. Drewry therefore had an absolute right to obtain a writ of replevin in order to recover the personal property in question.

21. Drewry had an absolute right to both immediate and ultimate possession of the subject doorskins. He is therefore entitled to seek recovery of money damages, if any, as were caused by the taking and detention of the doorskins by Paley & Tucker, together with costs, in accordance with the provisions of §78.18, Florida Statutes.

22. Drewry had no obligation to intervene in Case No. 76-14792 as permitted by §83.15, Florida Statutes, for the purpose of litigating his right to possession of the subject doorskins. The right of intervention created by that statute is permissive rather than mandatory, and does not represent the exclusive remedy available to a party whose property has been levied on pursuant to the provisions of Chapter 83, Florida Statutes. Moreover, defendants have waived the right to allege that this is not the proper forum for adjudicating such matters by virtue of their stipulation made in open court as described above.

23. There is no genuine issue as to any material fact created by the present record and plaintiff Edwin C. Drewry is entitled to a judgment as a matter of law with respect to Count I of his first amended and supplemented complaint.

Whereupon, it is ordered and adjudged as follows —

A. The motion of plaintiff Edwin C. Drewry for a final judgment of replevin on Count I of his first amended and supplemented complaint is granted.

B. Count III of the amended counterclaim of defendants Paley & Tucker (seeking damages against plaintiff Edwin C. Drewry for wrongful replevin) is dismissed with prejudice.

C. The court retains jurisdiction of this cause to determine the remaining counts of plaintiff's first amended and supplemented complaint and of defendants' amended counterclaim, and for the further purpose of determining the amount of damages and costs which plaintiff is entitled to recover under §78.18, Florida Statutes.