HERSEY, Chief Judge.
This litigation arose from a controversy between appellants as lessors of certain recreational facilities and appellees as tenants of those facilities. Pursuant to section 718.401(4)(a), Florida Statutes (1987), a nonfinal order required rent to be paid into the registry of the court. The main issue on appeal calls into question the constitutionality of section 718.401(4)(a), Florida Statutes (1987).
Ashby “A” Condominium Association (Ashby) is a plaintiff/appellee, and an “Association Lessee” under the leases. Plaintiff/ appellee, Trinchitella, is the owner of a condominium unit and an “Individual Lessee.” The additional plaintiff/appellee is the Condominium Owners Organization of Century Village East, Inc. (COOCVE), a Florida not-for-profit corporation. COOCVE, in its capacity as agent for the condominium associations, has entered into various contracts with the lessors, appellants.
The Second Amended Complaint filed by the lessees alleged that the lessors failed to allow the COOCVE Recreation Committee to exercise policy-making and decision-making powers as required by a contract between the parties. The complaint seeks a determination as to whether the committee has such decision-making powers and also seeks damages for certain allegedly unauthorized expenditures made by the lessors.
Upon motion of the plaintiff/lessees and without an evidentiary hearing, the trial court entered the order now on appeal requiring rent to be paid into the registry of the court.
Rent under the long-term leases is of two types. There is an increment referred to as “base rent” which is payment for rental of the facilities. A second increment is referred to as “operational rent” which is used to defray expenses such as maintenance, janitorial services and landscaping.
The trial court ordered periodic disbursement of base rent to the lessors and established a method for determining the appropriateness of disbursements of operational rent from time to time.
Before addressing the issues as presented by the parties, we pause to make reference to an aspect of the pleadings and certain actions of the parties that lend a suggestion of mootness to our inquiry. Both the pleadings and material in the transcript suggest that there is no controversy concerning the amount of rent that is due. In addition, the parties by agreement have arrived at a mutually satisfactory arrange *1199 ment for payment and disbursement of rent during the pendency of the litigation, so that payment is not being made into the registry of the court. Even so, we do not choose to rest our disposition upon mootness since there remain issues constituting a case and controversy.
We treat the cross appeal first. Ap-pellees contend that the trial court erred in ordering periodic and automatic disbursement from the registry of the court to appellants of all “base rent” without an evidentiary hearing or any showing of the presence of factors specified in the statute as justifying disbursement. In view of concessions by appellees in the pleadings and elsewhere in the record that no dispute exists with regard to the base rent, we find that any error is harmless and affirm as to the cross appeal.
Turning next to the direct appeal, appellants present four issues for our consideration. First, it is argued that section 718.-401(4), Florida Statutes (1987), was improvidently invoked by appellees and thus erroneously applied by the trial court. Appellants take the position that the statute does not apply in a case such as this where neither the amount of rent nor the lessors’ entitlement to it is placed in issue. In four counts the second amended complaint seeks declaratory relief, injunctive relief and damages related to the lessors’ refusal to allow meaningful participation by the COOCVE Recreation Committee in policy-making decisions regarding the operation of the recreational facilities. The amount of rent due from time to time is not in controversy.
The portion of the statute material to this question provides:
(4)(a) In any action by the lessor to enforce a lien for rent payable or in any action by the association or a unit owner with respect to the obligations of the lessee or the lessor under the lease, the unit owner or the association may raise any issue or interpose any defense, legal or equitable, that he or it may have with respect to the lessor’s obligations under the lease. If the unit owner or the association initiates any action or interposes any defense other than payment of rent under the lease, the unit owner or the association shall, upon service of process upon the lessor, pay into the registry of the court any allegedly accrued rent and the rent which accrues during the pend-ency of the proceeding, when due.
This is an action by an association and a unit owner with respect to obligations of the lessor under the lease. By the plain language of the statute, therefore, it applies to the controversy between these parties.
The dual purpose of the statute also lends support to the proposition that it should apply under these circumstances. One purpose of the statute is explained in Saul v. Basse, 375 So.2d 290 (Fla. 2d DCA 1979):
[§ 718.401(4)(i) ] contemplates the establishment of. a secured fund which would be available to satisfy any monetary judgment obtained in favor of petitioners against respondents. Failure to require all rents to be deposited into the registry of the court may cause irreparable injury to petitioners in that petitioners could be required to seek other sources to satisfy any judgment they should obtain. Such alternative sources may not exist or may be insufficient to fully satisfy the judgment.
A second purpose of the statute is to require the unit owners to continue to pay rent during the pendency of litigation. This is intended to benefit the lessor who, in the absence of such a provision, might be totally deprived of rental payments throughout the course of protracted litigation and even after prevailing in that litigation might very well be confronted with the requirement of bringing suit for eviction or past due rent.
Thus, the statute, while imposing burdens, likewise affords benefits to both contracting parties. While we make no other judgment on the wisdom of the legislation, we hold that it was appropriately applied in this case.
Appellant questions the standing of plaintiff/appellee, Condominium Owners Organization of Century Village East, Inc., (COOCVE) to invoke the statute. *1200 COOCVE is obviously neither a “unit owner” nor a condominium “association.” It is, rather, an umbrella organization formed as an advisory group to all of the associations and has acted as their agent in dealings with the lessors. COOCVE’s standing or capacity to invoke the statute is said to be predicated upon two theories. Appel-lees argue first that because appellants have previously dealt with COOCVE as the agent for the associations, they are now estopped to deny that agency for purposes of this litigation. The second argument advanced by appellees is that rule 1.210 of the Florida Rules of Civil Procedure confers status upon COOCVE to entertain the present suit in its capacity as one in whose name a contract has been made for the benefit of another.
Both of these arguments miss the point. The issue is whether this statutory provision may be invoked by an organization that is neither a “unit owner” nor an “association.” Under an earlier version of the statute only a “unit owner” could bring this statutory remedy into play. Strictly construing the language of the statute, the supreme court held, in Century Village, Inc. v. Wellington, E, F, K, L, H, J, M, & G, Condominium Ass ’n, 361 So.2d 128 (Fla.1978), that an association could not invoke the statute. In the same vein, we hold that COOCVE has no standing to invoke the statute.
Appellant also challenges the constitutionality of the statute. One prong of this challenge complains of the statute’s failure to provide for an evidentiary hearing prior to “seizure” of the rents. This is a due process argument of the genre of prejudgment seizures of property cases and garnishment cases. The constitutional issues in this area of the law, at the federal level, have been exposed and treated in Sniadach v. Family Finance Corp. of Bayview, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Mitchell v. W.T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975). Florida exposure occurred in Unique Caterers, Inc. v. Rudy’s Farm Co., 338 So.2d 1067 (Fla.1976), and Ray Lein Const., Inc. v. Wainwright, 346 So.2d 1029 (Fla.1977). We have carefully considered the parties’ argument based upon these cases but conclude that the statute we are called upon to evaluate does not fit within the parameters of these due process concerns. To illustrate:
(1) In one typical situation A buys an automobile from B on credit. Title to the automobile passes to A so that it becomes ■ his property. B maintains only a security interest. When A defaults, B’s remedies are circumscribed by due process concerns because he is attempting to seize A’s property. These are the prejudgment seizure cases.
(2) In a garnishment, on the other hand, C holds property belonging to D who is indebted to E. When E attempts to garnish the property held by C, again it is D’s property that E wants to “seize.”
The instant case follows neither of these scenarios. Instead, we have a contract requiring a lessee to pay periodic rent to a lessor in consideration of the use of premises. The question is whether a statute may alter the terms of that contract or “impair the obligation” of the contract.
It goes without saying that it is the retroactive application of a statute which gives rise to questions of unreasonable impairment of contract obligations and remedies. A statute in place at the time of contracting cannot be in violation of this particular constitutional prohibition. This is so because the law imposes upon the marketplace a presumption that parties enter into contracts in contemplation of existing statutory and case law. That context becomes part of the bargain and thus cannot be relied on by either contracting party to avoid an obligation or enhance a remedy. We point this out because the parties argue:
(1) Appellee: either the statute was in place, albeit in an earlier form, at the time the leases were entered into, or the condominium declaration adopts the various condominium statutes as the same may be amended from time to time, so that there can be no impairment of contract.
*1201 (2) Appellant: there is no record showing of the relative times of execution of leases and adoption of amendments to the statute so this court cannot tell, in the absence of an evidentiary hearing, to what extent there could be an impairment. Further, the leases specifically provide that no amendment to the applicable statutes shall affect the terms of the leases. Therefore, there is a possibility of impairment of the contract.
To bring the matter into focus: if our subsequent analysis leads us to conclude that application of the statute constitutes an unreasonable impairment of contract rights, then we will return to the inquiry begun here. If the statute passes constitutional muster, on the other hand, then the present inquiry into “consent” becomes moot.
The appropriate context in which an analysis of the issue of impairment of obligations of contracts must be made is article I, section 10 of the Florida Constitution and the parallel provisions of the federal constitution. We thus turn for guidance to Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla.1979), which deals with this aspect of constitutional law.
Pomponio was concerned with an earlier version of the statute now under consideration: section 718.401(4), Florida Statutes (1977). After tracing the federal evolution of decisional analysis of the impairments of contracts problem, the supreme court determined the statute to be constitutionally infirm and struck it down. The court reasoned that, “in the absence of contractual consent significant rights are unreasonably impaired by the statute’s operation.” The court noted that the lessor was permitted by the statute to withdraw from the registry amounts needed for maintenance of the property, but not the lessor’s built-in profit. This latter portion of the rent might be held during the entire pendency of protracted litigation. This was felt to be a substantial impairment of the lessor’s contract rights which could not realistically be balanced against the public policy sought to be effectuated by the statute. The court in fact suggested that the evils which the statute was designed to correct were largely illusory. Fatal to the balancing process, said the court, was the absence of a provision authorizing disbursement of funds upon a showing of “actual danger of loss of the premises or other personal hardship resulting from the loss of rental income from the premises,” quoting section 83.61, Florida Statutes (1977), as an example of a provision that would presumably withstand constitutional scrutiny.
A special concurrence of Justice Overton points out another basis for concluding that the impairment under the earlier version of the statute was substantial and unreasonable. Funds on deposit with the court earn interest. Under the 1977 statute, that interest belonged, not to the individual or entity whose claim for the underlying funds ultimately prevailed, but rather to the state for “the benefit of all of the people,” pursuant to the holding of Beckwith v. Webb’s Fabulous Pharmacies, Inc., 374 So.2d 951 (Fla.1979), rev’d, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980). Justice Overton then concludes that the statute would be constitutional “if the trial court had the authority to direct the disposition of interest earned and the lessors or lessees could be made whole if their position was upheld at the conclusion of the proceedings,.... ”
In the context of the law as it existed in 1979 the statute was found to be facially unconstitutional. Two developments lead us to conclude that the constitutional impediments noted have been removed.
First, the statute has been amended to include a provision which authorizes disbursement of funds to the lessor which are shown to be “necessary for the payment of other expenses arising out of personal hardship resulting from the loss of rental income from the leased facilities.” This amended language fulfills the requirement which the supreme court enunciated in Pomponio. The second development is a change in the law pertaining to interest on funds deposited in the registry of the court. Reversing Beckwith, the United States Supreme Court, in Webb’s Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), decreed that such interest accrues to the benefit of *1202 the litigant or other interested party whose claim to the underlying funds prevails in the litigation. Thus, both the impediment to the statute pointed out by the Pomponio majority and the shortcoming in the statute raised by the special concurrence are no longer present. On this basis and for the foregoing reasons we hold that the present statutory scheme is not constitutionally infirm.
Because we find the statute facially constitutional it is unnecessary to further analyze the consent/estoppel aspect of application of the statute adverted to earlier.
Finding no error, with the exception of the standing of COOCVE in this litigation, we affirm except that COOCVE, upon remand, shall not be allowed to avail itself of the protection afforded under section 718.-401(4)(a), Florida Statutes (1987).
AFFIRMED AND REMANDED.
GUNTHER, J., concurs.
WARNER, J., concurs specially with opinion.