WARNER, Judge.
This is an appeal of a final summary judgment determining section 718.302, Florida Statutes (1979) does not apply to certain long term leases and Master Management Agreements entered into by condominium unit owners, thus precluding the unit owners from exercising control over the maintenance and operation of certain community services and recreational facilities. We reverse.
In order to understand the issues of this case a detailed review of the documents involved in this case is required. The appellants comprise sixteen condominium associations located in Century Village West in Boca Raton. They will be collectively referred to as the Associations. The complex contains over 5,000 residential units constructed and sold between 1979 and 1984. At the time the units were submitted to condominium ownership section 718.302(1), Florida Statutes provided:
(1) Any grant or reservation made by a declaration, lease, or other document, and any contract made by an association prior to assumption of control of the association by unit owners other than the developer, that provides for operation, maintenance, or management of a condominium association or property serving the unit owners of a condominium shall be fair and reasonable, and may be canceled by unit owners other than the developer:
[[Image here]]
(d) If the owners of units in a condominium have the right to use property in common with owners of units in other condominiums and those condominiums are operated by more than one association, no grant, reservation, or contract for maintenance, management, or operation of the property serving more than one condominium may be canceled until unit owners other than the developer have assumed control of all of the associations operating the condominiums that are to be served by the recreational area or other property, after which cancellation may be effected by concurrence of the owners of not less than 75 percent of the total number of units in those condominiums other than units owned by the developer.
The purpose of the statute was to prevent a developer from entering into long term operation and management agreements which would prove onerous to the unit owners. It provided a mechanism for the owners to take back control of their condominiums when the developer had sold over 75% of its units.
The developers of Century Village West were aware of and took into consideration the impact of 718.302 in writing its documents. A Declaration of Condominium was filed for each of the sixteen condominiums, and sixteen associations were established. The declaration included a long term lease between Century Village West, Inc., the developer-owner, and the condominium associations, covering the recreational facilities in the various condominiums. The declaration contained a provision that did not require the individual unit purchasers to buy their unit subject to the long term recreational lease, but if they did not, the owners could not use any recreational facilities. In practical terms joinder in the lease was not optional if the unit owner wanted to use any of the amenities available, which generally is a reason why people buy in condominiums in the first place. Rent was comprised of two components: base rent for the property itself and operational rent which consisted of the costs of operating the recreational facilities and programs.
In addition to the long term lease, the declaration included a Master Management Agreement (MMA). The declaration provided that the Master Management Firm (MMF) would be responsible for maintaining and operating “community services and facilities”. These were “quasi-municipal” services and facilities, including among other things the providing of security for Century Village; internal and external transportations system; maintenance of roads, drainage and lake systems, and entrance ways; and the providing of utilities including water, sewer, and cable TV. Each individual owner executed an *231 identical Master Management Agreement with Cen-West Communities, Inc., a subsidiary of the developer, which was a mandatory requirement of purchase of a condominium unit. While the Associations were not parties to the MMA, they agreed in the declaration to cooperate with the MMF and to execute any easements across condominium property necessary for the MMF to perform its functions. Furthermore, the Association agreed to collect the management fees and payments from the owners for the benefit of the MMF. The declaration also included a statement that the unit owners by executing the agreement acknowledged the “absolute necessity of the Master Management Agreement for the provision of the services enumerated therein for the benefit of the Century Village community as a whole.” Each of the individual unit owners signed a copy of the MMA.
In 1990 after the unit owners of the sixteen condominiums acquired control of the various associations, the Associations brought suit to cancel the provisions for operation and management of the recreational facilities by the lessor under the long term lease. Additionally, the associations sued to cancel the MMA claiming that 75% of the members of each Association had voted to cancel the agreements in accordance with section 718.-302(l)(d), Florida Statutes. The developer and its subsidiaries refused to honor the cancellation. On motion for summary judgment the trial court determined that since each unit owner was a direct signatory to the lease agreement and management agreement, the cancellation procedures of section 718.302 did not apply, as the statute only applied to contracts between the association and a third party. We disagree.
The condominium statute contemplates that the operation and management of the condominium will be conducted by the condominium association. Sections 718.103(18); 718.111(l)(a), Fla.Stat. The act further provides for transfer of control of the association from the developer to the unit owners, and in order to promote autonomy for the unit owners, section 718.302, Florida Statutes, provides that grants, reservations, and contracts entered into by the Association providing for the operation and maintenance of the condominium property or property serving the unit owners of a condominium may be cancelled by a 75% vote of the Association members. The statute further provides in section 718.-303(2) that “a provision of this chapter may not be waived if the waiver would adversely affect the rights of a unit owner or the purpose of the provision_” (emphasis added).
Looking first to the lease agreement, this is both a lease involving property serving the unit owners as well as a contract between the Association and a third party, namely the developer. It provides in its terms for the complete operation and maintenance of these facilities by the lessor. Thus, contrary to the finding of the trial court the operation and maintenance provisions of the lease come within the ambit of section 718.302(1) and are subject to the cancellation provision of section (d). That each unit owner also agreed to be bound by the provisions of the lease as a condition of membership in the Association and as part of the purchase price does not in our view eliminate the protection of the statute. Section 718.303 quite clearly prohibits waiver of any provision of the condominium act by any unit owner- if it would adversely affect the purpose of the provision. Thus, the joinder of each individual unit owner in the lease does not constitute a waiver of the unit owner’s right to vote to cancel the operation and maintenance provisions of the lease, for to do so would amount to a waiver by the owners which would adversely affect the purpose of the cancellation provision of the statute.
The MMA requires more analysis because the Associations are not signatories to that agreement. First, the purpose of the agreement is to provide essential services to the condominium, as the declaration itself states. To the extent that the MMF provides services necessary to the operation of the condominium it supplants the authority of the Associations to operate the condominium, contrary to the provisions of the § 718.-lll(l)(a), Florida Statutes (1991). Therefore, a reservation in the declaration that provides for the operation of the condominium association or property serving the condominium, which the MMA clearly does, is *232 within the ambit of section 718.302, Florida Statutes as it is a “grant or reservation made by a declaration ... that provides for operation, maintenance or management of a condominium association or property serving the unit owners.” Section 718.302(1). Upon the vote of 75% of the unit owners of each condominium association having a common right to use the property which serves them jointly, the reservation to the MMF of the management of the community facilities and service can be cancelled.
Again, we do not think that the individual contracts between each owner and the MMF alter the analysis because no unit owner can waive the provisions of the statute if it would adversely affect the purpose of the provision. Section 718.303(2), Fla.Stat. The scheme created by the developer and his subsidiary corporations to contract individually with each owner appears directly tailored to avoid the cancellation rights under 718.302(l)(d). Therefore the owner’s joinder in the management agreements would undermine the purpose of the provision which is to allow the residents control over the maintenance and operation of their homes and property, something prohibited by the non-waiver provision of section 718.303(2).
This construction is consistent with the intent of the statutes. The appellees’ response is that each unit owner entered into an individual contract binding the owner to this form of management of their community and that contract principles govern. However, as in Tri-Properties v. Moonspinner Condominium Association, 447 So.2d 965 (Fla. 1st DGA 1984), the First District said with respect to section 718.302:
The intent of the Legislature to confer upon unit owners other than the developer, cancellation rights in addition to rights they would have under ordinary contract law is apparent....
The developer/lessor and Master Management Firm entered into the leases and agreements with full knowledge of the cancellation provisions of 718.302 and the anti-waiver provisions of 718.303(2). Those laws become a part of the contract as if they were expressly referred therein. Cenvill Investors, Inc. v. Condominium Owners Organization of Century Village East, Inc., 556 So.2d 1197 (Fla. 4th DCA 1990); see also Tri-Properties, supra. While the developers were very clever in setting up their documents, they could not succeed in vitiating the statutory protections in place for the condominium dwellers.
Based on the foregoing, the final summary judgment is reversed and remanded for further proceedings.
STONE, J., concurs.
ROSS, DALE, Associate Judge, dissents without opinion.