FILED

June 15, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-0002, *Justice Holdings, LLC v. Glade Springs Village Property Owners Association*

Armstead, Justice, joined by Judge Howard, concurring, in part, and dissenting, in part:


This matter involves a complex series of contracts and declarations, spanning several years, a review of the complexities of the Uniform Common Interest Ownership Act ("UCIOA"), and numerous orders issued by the circuit court interpreting the parties' rights and obligations related to Glade Springs Village ("GSV"). While the majority opinion adeptly navigates the numerous assignments of error raised by the parties in the current appeal, and I agree with many of the conclusions reached by the majority, I write separately because I believe the majority has misapplied the term "without penalty" as provided for in the UCIOA, and accordingly, I dissent as to the majority's determination that such phrase permits the Glade Springs Village Property Owners Association, ("Association"), to escape certain of its obligations related to the repayment of the July 1, 2001 loan agreement, ("Utilities Loan"), between Cooper Land Development ("Cooper Land"), predecessor in interest to Justice Holdings, LLC ("Justice Holdings"), and the Association.


It is clear that the Utilities Loan was entered into for the purpose of "funding the construction and installation of the water, wastewater, and electric utilities" to serve GSV. While I concur with the majority's determination that the UCIOA provided the Association the **right to terminate** the Utilities Loan, which the circuit court correctly determined that the Association did on February 16, 2020, I disagree as to the majority's

1

conclusion that such termination relieved the Association of any obligation to repay the remaining amounts due pursuant to the Utilities Loan.

The pertinent portion of the UCIOA provides:

> *If entered into before the executive board elected by the unit owners pursuant to section 3-103(f) takes office*, (i) any management contract, employment contract, or lease of recreational or parking areas or facilities, (ii) *any other contract or lease between the association and a declarant or an affiliate of a declarant*, or (iii) any contract or lease that is not bona fide or was unconscionable to the unit owners at the time entered into under the circumstances then prevailing, *may be terminated without penalty by the association at any time after the executive board elected by the unit owners pursuant to section 3-103(f) takes office upon not less than ninety days' notice to the other party*. This section does not apply to: (i) Any lease the termination of which would terminate the common interest community or reduce its size, unless the real estate subject to that lease was included in the common interest community for the purpose of avoiding the right of the association to terminate a lease under this section, or (ii) a proprietary lease.

W. Va. Code § 36B-3-105 (1986) (emphasis added). In this matter, it is clear this statute applies to the Utilities Loan extended to the Association by Cooper Land and assumed by Justice Holdings, as Cooper Land's successor in interest. Once Justice Holdings transformed its membership in the Association from Class B to Class A, thereby relinquishing control of the Association, the reconstituted Association elected a new executive board and promptly terminated the Utilities Loan, as allowed by the provisions of West Virginia Code § 36B-3-105. Again, I have no reservations with such cancellation.

2

However, the question remains – what does the phrase "without penalty" in West Virginia Code § 36B-3-105 mean? The majority opinion concludes that it means that, once the Utilities Loan was terminated, the Association was absolved from any obligation to pay back the principal or interest on the loan. The complete exoneration granted the Association by the majority opinion includes any and all responsibility to repay money ostensibly extended to the Association to construct utilities. However, such holding essentially results in a gift or windfall to the Association of approximately $11 million in utility improvements. A clear reading of West Virginia Code § 36B-3-105 simply does not support the majority's determination that the Legislature intended such interpretation of the phrase "without penalty."

Application of our well-established rules of statutory construction belie the conclusion reached by the majority. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). "It is a cardinal rule of statutory construction that a statute should be construed as a whole, so as to give effect, if possible, to every word, phrase, paragraph and provision thereof, but such rule of construction should not be invoked so as to contravene the true legislative intention." Syl. Pt. 9, *Vest*. Further, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma - Chief Logan No. 4523, Veterans of Foreign Wars of U.S., Inc.*, 147 W.Va. 645, 129 S.E.2d 921 (1963). Therefore, given these guidelines:

3

> A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.

Syl. Pt. 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Rather than limit the phrase "without penalty" to its plain meaning under the statute, the majority conflates the term "penalty" with the term "obligation" and concludes that West Virginia Code § 36B-3-105 requires abrogation of both ***penalties and obligations***. Indeed, the majority specifically says as much when it states: "[t]o terminate without penalty, then, means to terminate *without any further costs or loss* to the Association. When a contract is terminated without penalty, the *obligations* that were based upon the existence of that contract necessarily end." (Emphasis added). The majority emphasizes this view in Syllabus Point 3 of the majority opinion, which provides: "[b]ased on the plain language of the statute, when an association terminates a contract 'without penalty' under West Virginia Code § 36B-3-105, that termination ends the parties' rights and *responsibilities* at the time of the termination." (Emphasis added). Respectfully, the "plain language of the statute" provides no such thing.

Our Legislature has used the phrase "without penalty" throughout the West Virginia Code in approximately twenty different provisions and in a variety of contexts.

4

Of those references, including the provisions of West Virginia Code § 36B-3-105 at issue

here, thirteen simply use the phrase "without penalty" absent any modifying words.[1]

Significantly, of the remaining seven references, three use the phrase "without penalty or

further obligation" *See* W. Va. Code § 46A-6H-5(a) (1999) (Providing a nonwaivable right

to rescind a transfer agreement to a consumer "without penalty or further obligation" within

five days of closing the transfer.); W. Va. Code § 46A-6N-3(2) (2019) (Allowing

---

[1] *See* W. Va. Code § 46A-3-110(1) (1996) (A "consumer may *repay in full the unpaid balance* of a consumer credit sale or a consumer loan, refinancing or consolidation at any time *without penalty*." (Emphasis added)); W. Va. Code § 18B-4-10(b)(3)(A) (2013) (Causing a rule to be implemented allowing higher education students called to military duty to withdraw from courses "*without penalty*.") (Emphasis added); W. Va. Code § 36B-4-101(b)(6) (1994) (Disposition of a property in a common interest community restricted to non-residential use does not require a public offering statement or resale certificate when the "disposition … may be cancelled at any time and for any reason by the purchaser *without penalty*.") (Emphasis added); W. Va. Code § 36B-4-108(b) (1994) (A purchaser may cancel a contract within fifteen days after receiving a public offering statement "*without penalty*, and all payments made by the purchaser before cancellation must be refunded promptly.") (Emphasis added); W. Va. Code §§ 18B-10-14(h)(2) and 18B-10-14(k)(2)(B) (2023) (Providing students the opportunity to withdraw from courses "*without penalty*" because course materials were not selected and establishing the date of course withdrawal "*without penalty*" as the date by which a student may opt out of certain charges.) (Emphasis added); W. Va. Code § 47-24-4(f) (1996) (Prepayment of reverse mortgages "shall be permitted *without penalty* at any time during the period of the loan.") (Emphasis added); W. Va. Code § 46A-2-105(1) (2017) (Certain balloon payments can be refinanced "*without penalty*.") (Emphasis added); W. Va. Code § 31G-4-5(b) (2020) (Allows electric utilities to submit feasibility studies of a proposed broadband project by a date certain. Late feasibility studies may be submitted "*without penalty*.") (Emphasis added); W. Va. Code § 33-8-2(11) (2004) (Part of the definition of "cash equivalents" is "short-term, highly rated and highly liquid investments or securities readily convertible to known amounts of cash *without penalty* and so near maturity that they present insignificant risk of change in value.") (Emphasis added); W. Va. Code § 59-1-2(i) (2021) (Customers of the Secretary of States' Prepaid Fees and Services Account "may request the return of any moneys maintained in the account at any time *without penalty*.") (Emphasis added); W. Va. Code § 17A-3-4(b)(14)(E) (2017) (Allowing payment *without penalty* of certain fees for motor vehicle title and registration fees during a three-month period in 2007.) (Emphasis added).

consumers a right of recission to cancel litigation finance contracts "without penalty or further obligation," in certain situations.); W. Va. Code § 46A-6N-5(b)(1)(J) (2019) (Specific language must be contained in litigation finance contracts allowing cancellation "without penalty or further obligation," in certain situations).

Two statutory provisions use the phrase "without penalty or other assessment." *See* W. Va. Code §§ 33-8-12(e)(5) & 33-8-25(e)(5) (2004) (Withdrawals from an insurer investment pool "may be made on demand without penalty or other assessment."). The remaining two references are to two different phrases. One utilizes the phrase, "without penalty or monetary obligation." *See* W. Va. Code § 46A-6M-3(4) (2015) (Roofing contractors have duty to disclose to a consumer that a contract for repair or replacement may be cancelled "without penalty or monetary obligation" if the consumer's insurer does not cover the cost of repairs or replacement). In another, the Legislature used the phrase "without penalty, fees or costs to the borrower." *See* W. Va. Code § 33-4-23 (2018) ("'Free look period' means the period of time from the effective date of the guaranteed asset protection waiver until the date the borrower may cancel the contract without penalty, fees or costs to the borrower.").

Clearly, the Legislature meant the simple phrase "without penalty" to mean something different than the other terms that contain words that modify or add to the words "without penalty." These varying phrases employed by the Legislature show unequivocally that the phrase "without penalty" standing alone does not encompass prior

"obligations," "fees" or "costs." If it did, there would be no reason for the Legislature to add those phrases in the circumstances in which it has done so. Here, the plain language refers to "penalties" only. Where such language is plain, we apply the subject statutory language as written without any further interpretation. *See* Syl. Pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."); Syl. Pt. 5, *State v. Gen. Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

The absence of language adding to or modifying "without penalty" means we are to apply its plain meaning. Clearly, West Virginia Code § 36B-3-105 does not permit Justice Holdings to impose any additional penalty, in the form of increased interest or cancellation fees on the Association due to its decision to cancel the Utilities Loan. The majority, without citing any statutory authority to do so, would erroneously extend this protection against additional penalties to apparently include the repayment of the original principal of the loan itself. There are simply no legal grounds on which to extend the meaning of "without penalty" to the principal of the loan used to fund construction of infrastructure and utility facilities for the Association. We have previously addressed, in the context of our state's Consumer Credit and Protection Act, West Virginia Code, Chapter 46A, the question of whether the inclusion of unconscionable terms in a loan

7

agreement permits a court to absolve the party victimized by such terms from repayment of the principal of such loan. *See Quicken Loans, Inc. v. Brown*, 230 W. Va. 306, 737 S.E.2d 640 (2012). We determined in that case that it did not. *See id.*, 230 W. Va. at 328, 737 S.E.2d at 662.

In *Quicken Loans*, the circuit court found, *inter alia*, that the lender in that case had included unconscionable terms in the loan agreement, including improper loan discount points without corresponding benefit to the borrower, a $107,015.71 balloon payment that was not properly disclosed and an inflated value of the property used to secure the loan. *See id.*, 230 W. Va. 315-6, 737 S.E.2d 649-50. Following a bench trial, the circuit court found, *inter alia*, that the lender had committed fraud, violated various provisions of the West Virginia Consumer Credit and Protection Act, and violated applicable law related to illegal appraisals. *See id.*, 230 W. Va. 318, 737 S.E.2d 652. In addition to declaring the note and deed of trust unenforceable and awarding restitution of payments made by the borrower to the lender, the court further enjoined the lender from attempting to collect any future payments under the loan, "effectively cancelling Plaintiff's loan obligation." *Id.* We reversed the circuit court's order to the extent it effectively forgave repayment of the principal of the loan, finding that the Legislature, under the provisions of the West Virginia Consumer Credit and Protection Act, had not provided for forgiveness of the loan in the circumstances present in the case. *See id.*, 230 W. Va. 327, 737 S.E.2d 661. Indeed, although the consumer was relieved of certain future obligations under the unconscionable loan agreement, the borrower was still required to repay the principal of the debt obligation.

8

*See id.* 230 W. Va. at 327-8, 737 S.E.2d 661-2. Likewise, in this case, the UCIOA does not provide for forgiveness of the underlying loan principal, but simply permits the party canceling the loan agreement to avoid penalties for its cancellation.

The plain meaning of "without penalty" is simply that there can be no penalties or liquidated damages required for the Association to cancel the loan agreement. "Without penalty" clearly does not mean the Association gets $11 million in utilities funding for nothing. The comments to the Restatement (Third) of Property: Servitudes illustrate this point as to the purpose of the statutory cancellation provisions. As outlined by the majority, the relevant comment provides:

> The developer's duty to turn over control can be thwarted if the developer obligates the association to long-term arrangements that effectively deprive the owners of control of the common property. By the same token, the value of the members' investments can be significantly devalued by *long-term leases or other arrangements that commit them to pay potentially exorbitant costs for services or facilities*. While the association is under the developer's control, the members have little opportunity to protect themselves. Accordingly, modern statutes permit the association to terminate certain contracts that are likely to be critical to the members' enjoyment of their rights after the developer has relinquished control.

Restatement (Third) of Property: Servitudes § 6.19 cmt. d (Am. L. Inst. 2000) (emphasis added). Interestingly, the majority omits the remaining portion of comment d, including the next sentence which provides that "[t]he greatest abuses have occurred in contracts for *maintenance and management services* to the association and *leases* for recreational and parking facilities." *Id.* (emphasis added). Based on this comment, when read in its

9

complete context, it is clear that the protections allowing for cancellation of agreements are primarily designed to prevent an association from being tied to long-term service agreements or leases which would require ongoing payments for services after the association elects to cancel the agreement. In this case, the Utilities Loan is not a long-term agreement requiring the future payment of a management fee, a resort fee, a parking fee, or a facility fee. *See Ainslie at Century Vill. Condo. Ass'n, Inc. v. Levy*, 626 So. 2d 229, 230 (Fla. Dist. Ct. App. 1993) (Cancellation of maintenance, management, and recreational contracts was proper because "[t]he purpose of the statute was to prevent a developer from entering into long term operation and management agreements which would prove onerous to the unit owners."); *Energy Center, LLC v. Falls and Pinnacle Owners' Ass'n*, No. A11-1023, 2012 WL 254500 at *4 (Minn. Jan. 30, 2021) (Minnesota UCIOA allows cancellation of a 20-year service agreement for heating, cooling, and domestic hot water services entered into during period of declarant control). Here, we are considering a past loan agreement that appears to have funded the expenditure of $11 million to construct utilities throughout GSV, resulting in a direct benefit to the Association. Thus, West Virginia Code § 36B-3-105 gave the Association the right to cancel the contract but did not absolve the Association of the obligation to repay past monies loaned to it, expended by it and from which it continues to benefit after the cancellation of the Utilities Loan.[2]

---

[2] The majority opinion also holds that: "[t]o the extent that the circuit court, in its later assessments order, determined that the effect of the termination of the Loan was to erase its creation and the legal effect was to reverse prior payments under the Loan, we find that the court erred." This finding seems inconsistent with the majority's

10

Significantly, not only did the Association benefit from the proceeds of the Utilities Loan prior to its cancellation, but as the majority notes, the seventh and final amendment to the loan provided that the loan would mature on June 30, 2019, a date prior to the Association's termination of the Utilities Loan. The circuit court held, and the majority opinion affirms, that the Utilities Loan was terminated by the Association on February 16, 2020, more than seven months after the loan became due and payable. In fact, as outlined in the majority opinion, Justice Holdings sued the Association on November 6, 2019, for non-payment of the Utilities Loan, asserting that the Association failed to pay the balance due on the loan on June 30, 2019, or fifteen days thereafter. It was only after the initiation of the lawsuit seeking payment of the loan balance that the Association sent Justice Holdings a notice that it terminated the Utilities Loan. Even if the cancellation of the Utilities Loan absolved the Association of any obligation it would have had *after* the cancellation, it is clear from the record that its obligation under the Utilities Loan became due and payable on June 30, 2019, months before it cancelled the loan.

In summary, I believe that the phrase "without penalty" contained in West Virginia Code § 36B-3-105 does not relieve the Association from repaying the principal

---

determination that the Association may simply walk away from its obligations under the Utilities Loan. If the effect was not to "erase its creation," the majority's holding essentially unilaterally forgives the remaining payment obligations of one party to the Utilities Loan, the Association, while providing the other party no avenue to collect repayment of funds it provided to the Association for utility construction.

11

amounts loaned to it and expended for improvements to GSV. Accordingly, I respectfully dissent as to the majority opinion's affirmation of the circuit court's order absolving the Association of its obligation to repay the loan proceeds provided to it pursuant to the Utilities Loan. Moreover, the majority opinion remands this matter to the circuit court for further findings regarding the issue of back assessments the Association maintains are owed to it by Justice Holdings. While I concur in this finding, I also believe the record before us is not clear as to what proceeds of the Utilities Loan were distributed to the Association and used to install utilities for its benefit, and what, if any, of such amounts have already been repaid to Justice Holdings. I would, therefore, remand on this issue as well, and direct the circuit court to conduct a review of the amounts, if any, distributed, utilized and repaid in accordance with the Utilities Loan.[3]

I am authorized to state that Judge Gregory L. Howard, Jr., joins me in this separate opinion.

---

[3] While Justice Holdings also asserts that it is entitled to repayment of the Utilities Loan proceeds pursuant to equitable remedies, we need not address such issue because resorting to equitable relief is unnecessary. The Utilities Loan entitled Justice Holdings to its repayment and, as outlined herein, West Virginia Code § 36B-3-105 does not relieve the Association from repaying the amounts loaned to it.